866 A.2d 260

SAW CREEK COMMUNITY ASSOCIATION, INC., Appellee,

v.

COUNTY OF PIKE and The Pike County Board of Assessment Appeals, Appellants.

No. 29 MAP 2003.

Supreme Court of Pennsylvania.

Argued Oct. 22, 2003.

Decided Jan. 19, 2005.

Jan J. Stephen Lokuta, Esq., Milford, for Pike County and the Pike County Board of Assessment Appeals.

David Louis Horvath, Esq., Janet K. Marsh Catina, Stroudsburg, for Saw Creek Estates Community Association, Inc.

BEFORE: CAPPY, C.J., and CASTILLE, NIGRO, NEWMAN, SAYLOR, EAKIN and LAMB, JJ.

## OPINION

Justice NIGRO.

Appellants the County of Pike and the Pike County Board of Assessment (the "Board") appeal from the Commonwealth Court's order which reversed the trial court's order denying the tax assessment appeal of Appellee Saw Creek Community Association (the "Association"). For the reasons that follow, we affirm.

Saw Creek Estates is a planned community in Pike County and Monroe County, Pennsylvania, created pursuant to the Pennsylvania Uniform Planned Community Act (the "Act").[1] The Association is a nonprofit corporation organized by the homeowners in Saw Creek to manage Saw Creek's affairs. *See* 68 Pa.C.S. § 5301. Saw Creek primarily consists of townhouses, which are independently owned by homeowners in Saw Creek. The community, however, also includes: roads; ponds; green areas; tennis courts; a pool; a clubhouse; a water tower; a well house; a community building in which there are various recreational facilities, a meeting room, and a restaurant; and a single-story building in which there is a real estate sales office (the "sales office"). All of the latter property is owned by the Association, rather than by individual homeowners, but it may nevertheless be used by any of Saw Creek's residents.

Prior to the 2000—2001 tax year, the Board reassessed the value of properties within Saw Creek. In doing so, it determined that the roads, ponds, green areas, water tower, and well house, as well as the community building's recreational facilities and meeting room, qualified as "common facilities" of Saw Creek pursuant to section 5103 of the Act, which defines common facilities as: "Any real estate within a planned community which is owned by the association or leased to the association. The term does not include a unit." 68 Pa.C.S. § 5103. The Board then found that these facilities were exempt from separate assessment and taxation as common facilities based on section 5105(b)(1) of the Act, which directs that "no separate assessed value shall be attributed to and no separate tax shall be imposed against common facilities. . . ." *Id.* § 5105(b)(1). In contrast, the Board found that the restaurant and sales office did not qualify as common facilities under section 5103, and therefore, had to be separately assessed and taxed. Consequently, the Board assessed the restaurant as having a value of $142,190 and the sales office as having a value of $33,480.

1. Act of December 19, 1996, P.L. 1336, No. 180, § 1 (68 Pa.C.S. §§ 5101—5414).

The Association filed an appeal with the Board, arguing that the restaurant and sales office, like the roads, ponds, green areas, etc., were common facilities, and thus not subject to separate assessment and taxation.[2] The Board, however, denied the Association's appeal.

The Association then appealed to the trial court, which held a hearing on August 28, 2001. During the hearing, Nicholas Mazzarella, the general manager of the Association, testified that although the Association owned the property on which the restaurant was located, it had leased that property to a private entity for the express purpose of operating a restaurant.[3] Mr. Mazzarella explained that this arrangement was financially beneficial to the Association because it would lose money if it operated the restaurant on its own. Mr. Mazzarella further testified that although the restaurant was open to the public, it was considered a benefit to the residents of Saw Creek, as they were the primary patrons of the restaurant and received a 10% discount on their meals there. Moreover, Mr. Mazzarella stated that the rent that the restaurant operator paid to the Association went into a general fund to reduce the dues assessed against the Saw Creek homeowners for the common facilities.[4]

With regard to the sales office, Mr. Mazzarella testified that the Association leased the single-story building in which the sales office was located to a private real estate company, which used the building for the express and exclusive purpose of managing Saw Creek real estate transactions. Mr. Mazzarella

2. The Association paid the tax due on the restaurant and sales office under protest.

3. Indeed, the lease agreement between the Association and the restaurant operator not only indicated that the restaurant operator had to operate a restaurant on the leased premises, but also specified the restaurant's operating hours and name.

4. The lease agreement between the Association and the restaurant operator required the operator to pay the Association $1,000 a month to use the Association's property and to assume responsibility for all expenses affiliated with the restaurant. The agreement further stated that the restaurant operator was responsible for enforcing all of the policies, rules, and regulations concerning the use and operation of the restaurant, which were to be established by the Association.

further explained that the sales office, like the restaurant, was a benefit to Saw Creek homeowners because they could use the office to list their property for sale or rental.[5]

On November 15, 2001, the trial court entered an opinion and order affirming the Board's assessment of the restaurant and sales office. Specifically, the court interpreted the law to state that a facility could not be a common facility if it was designated to be occupied by persons other than the planned community residents.[6] Noting that here, the Association had leased the restaurant and sales office to private parties for their "exclusive" occupancy and use instead of maintaining the property for the unfettered occupancy and use of the Saw Creek residents, the court concluded that the restaurant and sales office could not be common facilities of Saw Creek, and thus were properly assessed and taxed by the Board.

The Association subsequently appealed to the Commonwealth Court, which reversed the trial court. *See Saw Creek Estates Community Assoc., Inc. v. County of Pike,* 808 A.2d 322 (Pa.Commw.2002). Unlike the trial court, the Commonwealth Court determined that the restaurant and sales office were clearly common facilities of Saw Creek, based on the plain and unambiguous definition of that term in section 5103. Turning to that statutory definition, the court explained that property qualifies as a common facility so long as it meets the following two requirements: (1) it is within the planned community; and (2) it is owned by or leased to the homeowners'

5. According to the lease agreement between the Association and the real estate company, the company was generally responsible for paying to the Association yearly rent in an amount equaling 10% of the gross commissions that the company received through transactions involving Saw Creek homes, which included any sales, rentals, or construction contracts. However, in no event was the real estate company to pay less than $24,000 or more than $50,000 annually. Moreover, the agreement made clear that the real estate company was responsible for managing the office and paying any expenses associated with the office.

6. The court explained that the definition for common facilities indicated that such facilities could not include "units" and that units were defined by the Act as property designated for "separate occupancy." *See* 68 Pa.C.S. § 5103. Accordingly, reading these two definitions together, the court concluded that common facilities could not include property designated for separate occupancy.

association.[7] The court then concluded that because the restaurant and sales office met both of the above statutory requirements, they were undoubtedly common facilities and, as such, exempt from independent assessment and taxation pursuant to section 5105(b)(1) of the Act.

In their appeal to this Court, Appellants the County of Pike and the Board do not seem to contest the Commonwealth Court's finding that the restaurant and sales office are common facilities, but rather appear to argue solely that the Commonwealth Court erred in determining that these properties are exempt from separate assessment and taxation as common facilities.[8] Appellants assert that pursuant to section 5105(b) of the Act, common facilities may only be exempt from separate assessment and taxation to the extent that the planned community homeowners possess an "appurtenant interest" in those facilities, which, according to Appellants, means that the planned community homeowners must have the right to free and unfettered access to those facilities. Applying that premise here, Appellants contend that the restaurant and sales office cannot be exempt from separate assessment and taxation because they have been leased to private parties and, as a result, the planned community residents do not have the right to use these facilities in a free and unfettered manner. After considering Appellants' argument, however, we cannot agree that the restaurant and sales office must be assessed and taxed under these circumstances.

On December 19, 1996, the General Assembly adopted the Act as a result of an increase in planned community developments in Pennsylvania.[9] *See e.g.,* Uniform Planned Communi-

7. The court noted that although the Board argued that real estate could not be a common facility if it was occupied by a private person or entity and not completely open to the planned community residents, such a requirement was not included in the statute, and it would not add such a requirement based on the "established statutory construction principle of *expression unius est exclusion alterius,* i.e., the express mention of a specific matter in a statute implies the exclusion of others not mentioned." *Saw Creek,* 808 A.2d at 325.

8. Notably, the Association also presented this argument to the Commonwealth Court, but that court did not resolve the issue in its opinion.

9. The Act was modeled on the Uniform Planned Community Act, which was adopted by the National Conference of Commissioners on Uniform

ty Act, prefatory note, 7B U.L.A. (1980); Norman Geis, *Codifying the Law of Homeowner Associations: The Uniform Planned Community Act*, 15 Real Prop., Prob. and Tr. J. 854, 854 (1980). Pursuant to the Act, a planned community is defined as:

> [r]eal estate with respect to which a person, by virtue of ownership of an interest in any portion of the real estate, is or may become obligated by covenant, easement or agreement imposed on the owner's interest to pay any amount for real property taxes, insurance, maintenance, repair, improvement, management, administration or regulation of any part of the real estate other than the portion or interest owned solely by the person.

68 Pa.C.S. § 5103. In simpler terms, a planned community is an area of land consisting of homes that are individually owned as well as common areas that are owned or leased by an association consisting of all of the homeowners in the community.[10] *See id.* §§ 5103, 5205, 5301; Uniform Planned Community Act, prefatory note, 7B U.L.A. (1980); Geis, *supra* at 854, 856. Significantly, however, the planned community homeowners are responsible for paying dues or fees to the homeowners' association for the common facilities. *See* 68 Pa.C.S. § 5103 (defining "common expense liability" as the "liability for common expenses allocated to each [home]"); *id.* § 5208 (explaining how the common expenses of the homeowners' association are allocated among the homeowners in a planned community).

The Act refers to each individually owned home in the planned community as a "unit," defining that term as "[a] physical portion of the planned community designated for

State Laws in 1980. *See* Unif. Planned Comm. Act §§ 1–101—5–110. Notably, Pennsylvania was the first jurisdiction to adopt a planned community act modeled on the Uniform Act. In 1999, North Carolina became the second and currently, the last jurisdiction to adopt an act modeled on the Uniform Planned Community Act. *See* N.C.G.S. §§ 47F–1–101—47F–3–120.

10. Notably, the homes in the planned community do not need to be single family homes. Rather, they may be townhouses or apartments, and thus attached horizontally or vertically.

separate ownership or occupancy, the boundaries of which are described [in the declaration creating the planned community]. . . ." 68 Pa.C.S. § 5103. In contrast, the Act refers to each common area in a planned community as a "common facility" and, as noted above, defines that term to include "[a]ny real estate within a planned community which is owned by the association or leased to the association." *Id.* However, the definition also states that common facilities do not include units. *See id.* The Act further explains that "each unit, together with the interests, benefits and burdens [attached to that unit pursuant to the planned community declaration], including, without limitation, the right to any common facilities, constitutes a separate parcel of real estate." *Id.* § 5105(a). Moreover, with regard to taxation, the Act declares that "each unit must be separately taxed and assessed [and the] value of a unit shall include the value of that unit's appurtenant interest in the common facilities." *Id.* § 5105(b). The Act then provides that "no separate assessed value shall be attributed to and no separate tax shall be imposed against common facilities. . . ." *Id.* § 5105(b)(1).

As an initial matter, Appellants do not appear to contest, and we can independently find no error in, the Commonwealth Court's finding that the restaurant and sales office constitute common facilities. Like the Commonwealth Court, we read section 5103 of the Act to clearly require that common facilities be: (1) located within the planned community; and (2) owned or leased by the planned community homeowners' association. *See id.* § 5103. However, unlike the Commonwealth Court, we also find that section 5103 contains a clear third requirement that a common facility not be a unit, *i.e.*, the property must not be designated for separate occupancy or ownership. *See id.*

Applying the above three requirements to the restaurant and sales office, we conclude that they both qualify as common facilities. As the Commonwealth Court found, the restaurant and sales office indisputably meet the first two requirements because they are located in the planned community and are owned by the Association. Moreover, we find that the restau-

rant and sales office also do not qualify as "units" because unlike the typical "unit" in a planned community, *i.e.*, a home, the restaurant and sales office are simply not designated for separate occupancy or ownership. As the context of the Act makes clear and as Appellants even acknowledge in their brief, the term "separate ownership or occupancy" in the "unit" definition "denote[s] exclusivity of use" by the owner or lessee. Appellants' Bf., at 14; *see also* 68 Pa.C.S. § 5105 (explaining that unit is a separate parcel of real estate for which unit owner is independently taxed); *id.* § 5202 (stating that any fixtures or improvements designated for a unit are allocated "exclusively" to that unit); *id.* § 5213 (explaining that a unit owner has the right to make any improvements or alterations to unit that do not impair the structural integrity of planned community). Under this construction, property is a unit, *i.e.*, designated for separate ownership or occupancy, only if the owner or lessee is entitled to use the property for himself and has no obligation to share the property with others. *See* Webster's II New College Dictionary 1007 (1st ed.2001) (defining "exclusive" as something that is "not shared with others"). Here, the Association did not lease the restaurant or the sales office to the lessees for their exclusive use, but rather leased them to the lessees so that they could use the property for the benefit of the Saw Creek residents.[11] Accordingly, these facilities cannot be classified as units and must instead be classified as common facilities. *See* 68 Pa. C.S. § 5103.

Having assured ourselves that the restaurant and sales office do indeed qualify as common facilities, we must next determine whether the Commonwealth Court properly found that all such common facilities are exempt from separate assessment and taxation pursuant to section 5105(b)(1) of the Act. While Appellants seem to argue otherwise, we find that

---

11. As Mr. Mazzarella explained, the Association leased the restaurant to the restaurant operator specifically so that it could operate a restaurant on the premises for the benefit of the Saw Creek homeowners. Similarly, the Association leased the single-story building in which the sales office is located to a private real estate company for it to operate a sales office from which the Saw Creek homeowners could list their property for sale or rental.

the language of section 5105(b)(1) plainly and unambiguously states that all common facilities are, in fact, exempt from separate assessment and taxation. *See* 68 Pa.C.S. § 5105(b)(1) ("no separate assessed value shall be attributed to and no separate tax shall be imposed against common facilities"). Thus, because we must effectuate the General Assembly's intent when interpreting statutes, and because the plain language in a statute is the best indicator of the General Assembly's intent, *see* 1 Pa.C.S. § 1921, we hold that the General Assembly must have intended section 5105(b)(1) to mean just what it clearly says: common facilities may *not* be separately assessed and taxed.

In spite of the plain language of section 5105(b)(1), Appellants urge us to find that common facilities may be separately assessed and taxed under certain circumstances, namely, when the homeowners in a planned community do not have an appurtenant interest consisting of the right to use the facilities in a free and unfettered manner. In contending that such an exception exists, Appellants assert that section 5105(b)(1) only exempts common facilities from separate assessment and taxation because the individual homeowners in a planned community are already assessed and taxed for those facilities by means of their "appurtenant interest" in the facilities. *See* 68 Pa.C.S. § 5105(b) ("[E]ach unit must be separately taxed and assessed. The value of a unit shall include the value of that unit's appurtenant interest in the common facilities...."). Arguing that individual homeowners only have an appurtenant interest in common facilities if they have the right to use the facilities in a free and unfettered manner, Appellants contend that there is no basis for exempting from separate assessment and taxation a common facility to which homeowners do *not* have free and unfettered access because the planned community homeowners will not be taxed for any appurtenant interest in that facility. Contrary to Appellants' assertion, however, homeowners do not have an appurtenant interest in common facilities only if they have the right to free and unfettered access to those facilities; rather, the Act makes clear that regardless of the quality of access

afforded to them, homeowners have an appurtenant interest in any facility that the planned community declaration designates as a "common facility," at least in the absence of proof that they actually derive no value or benefit from that facility. *See* 68 Pa.C.S. § 5105 ("each unit that has been created, together with the interests, benefits and burdens created by the declaration, *including, without limitation, the rights to any common facilities constitute a separate parcel of real estate*") (emphasis added); *Id.* § 5205 (explaining that planned community declaration must delineate between the units and the common facilities); Black's Law Dictionary 98 (7th ed.1999) (defining "appurtenant" as describing something that is "[a]nnexed to a more important thing"). Moreover, as the facts of this very case make clear, facilities designated as common facilities are simply not only those to which homeowners have free and unfettered access.[12] Accordingly, Appellants cannot rely on a contrary factual premise in asserting that certain common facilities are not exempt from separate assessment and taxation.

Thus, we conclude that the Commonwealth Court properly determined that the restaurant and sales office are common facilities and are thereby exempt from separate assessment and taxation pursuant to section 5105(b)(1) of the Act. Moreover, we hold that the Saw Creek homeowners retained appurtenant interests in the restaurant and sales office even though the association leased those facilities to private parties and did not keep them open for the homeowners' free and unfettered use.

The Commonwealth Court's order is affirmed.

Former Justice LAMB did not participate in the decision of this case.

---

12. Indeed, it may be typical that certain common facilities, like roads and green areas, are kept open for the homeowners' free and unfettered use, but most other common facilities, like tennis courts, pools, clubhouses, and meeting rooms, are kept open only for the homeowners' limited use.

Justice CASTILLE files a dissenting opinion in which Justice NEWMAN joins.

Justice NEWMAN files a dissenting opinion in which Justice CASTILLE joins.

Justice CASTILLE, dissenting.

In my view, the trial court was correct in ruling that the restaurant and real estate office operated on property owned by appellee Saw Creek Community Association, Inc. ("Saw Creek" or "Association"), but leased to private, for-profit entities, do not qualify as common facilities such as to exempt them from taxation. Therefore, I respectfully dissent.

The Common Pleas Court looked to general law in the area of tax assessment and properly found that the actual use of the property in this instance is more pertinent to issues of taxation than ownership. Citing this Court's decision in *In re Township of Moon*, 387 Pa. 144, 127 A.2d 361 (1956), the trial court noted that even property that is generally exempt from taxation because it is owned by a public entity may lose that tax exempt status if it is used for commercial purposes or leased to a purely business enterprise and not for a public use. In *Moon*, the issue before this Court was whether portions of the Greater Pittsburgh Airport, which was a tax exempt municipal property, were subject to taxation because they were rented to private individuals and corporations for the purpose of operating for-profit concessions including a jewelry store, news stand, hotel, night club, women's clothing store, barber shop, parking areas, and a number of restaurants, bars and cafes. The lease agreements with the concessionaires provided the Airport with a net minimum rent per month plus a percentage of gross sales. This Court held that the use of the disputed property was of paramount importance in determining its tax status:

> [T]here is equally no doubt but that property, even though owned by a body ordinarily tax exempt, is taxable if used by it for commercial purposes, or if rented to a lessee for a purely business enterprise and not a public use; this is true even though the rentals or other proceeds from the proper-

ty are devoted to the tax exempt activities of the lessor. . . .
It was said in the *West View Borough Municipal Authority
Appeal,* [381 Pa. 416, 113 A.2d 307, 309 (1955)]: "The
controlling test is, not merely whether the property or part
of it has been rented out, but whether the use of the part so
leased is for a public or a private purpose. It is the use of
the property, and not the use of the proceeds from the
property, which determines whether tax exemption may
constitutionally be granted."

*Id.* at 364 (citations omitted). Applying this principle to the
facts in *Moon,* this Court held that the portions of the Airport
devoted to commercial uses not constituting "a reasonably
necessary and incidental part of the Airport itself" were
subject to taxation. *Id.* at 365.

I agree with the trial court that the sound and realistic
approach set forth in *Moon* applies here. Indeed, the facts in
this appeal are so closely analogous to the facts in *Moon* as to
compel the same tax status conclusion. The property at issue
is owned by the Association and, pursuant to 68 Pa.C.S.
5105(b)(1), would ordinarily enjoy the tax exemption available
to common Association property in a planned community
However, the property is leased to two private entities, one of
which operates a restaurant, while the other operates a real
estate office. The rental agreements, like the agreements in
*Moon,* provide income to the Association in the form of a
minimum monthly rental and, in the case of the real estate
office, a percentage of commissions earned from real estate
transactions. The restaurant is open to the public, not just to
residents of the Association, and residents do not eat for free
in the restaurant, albeit they do enjoy a small discount.

These same businesses, if operated in the very same fashion
but located on property owned by an entity other than a
planned community's association, would undoubtedly be sub-
ject to taxation. These businesses do not exist solely for the
benefit of Saw Creek's residents, nor are they "a reasonably
necessary and incidental part" of Saw Creek Estates. Rather,
the Association has elected to make its property available to
for-profit businesses, in exchange for income. Such being the

use and economic reality of the property, it should be taxed in the same manner as other for-profit businesses not so fortunate as to lease their space from a tax exempt entity. These going business ventures should not be afforded a competitive tax advantage merely because of the fortuity of who owns the property.

I am also persuaded by appellants' argument that, because Saw Creek's residents do not possess an "appurtenant interest," meaning that they do not have free and unfettered access to the leased property, the restaurant and sales office should not be exempt from taxation because they are leased to private entities who control the use of the premises. As the trial court aptly noted, these for-profit corporations enjoy exclusive control over the leased property, which is therefore not subject to the unfettered use, control or dominion of Saw Creek's residents. Instead, the properties are exclusively used, occupied and controlled by these private entities for the purpose of generating a profit. The property should not be deemed tax exempt.

Accordingly, I would reverse the decision of the Commonwealth Court holding that the property is exempt from taxation and reinstate the trial court's determination.

Justice NEWMAN joins this dissenting opinion.

Justice NEWMAN, dissenting.

I join the dissent of Mr. Justice Castille, but write separately to address the language of the Uniform Planned Community Act (UPCA).[1] Specifically, the crux of the dispute *sub judice* focuses on the definition of a common facility, as well as the definition of a unit. I believe that the Majority errs in its approach to these definitions.

Initially, it is important to address the UPCA definitions. "Common facilities" are defined as "[a]ny real estate within a planned community which is owned by the association or leased to the association. The term does not include a unit."

1. Act of December 19, 1996, P.L. 1336, No. 180, § 1 (68 Pa.C.S. §§ 5101—5414).

68 Pa.C.S. § 5103. A "unit" is defined as "[a] physical portion of the planned community designated for separate ownership or occupancy, the boundaries of which are described [in a declaration] and a portion of which may be designated by the declaration as part of the controlled facilities." *Id.* A "controlled facility" is "[a]ny real estate within a planned community, whether or not a part of a unit, that is not a common facility but is maintained, improved, repaired, replaced, regulated, managed, insured or controlled by the association." *Id.*

The Majority contends, and Appellants concede, that the requirements for being a common facility and, therefore, exempt from taxation are that: (1) the property is located in Saw Creek; (2) the property is owned by the Saw Creek Community Association (Association); and (3) the property is not a unit.

It is certainly possible to categorize the real estate office and the restaurant as either a unit or a common facility. However, there are several factors militating in favor of the position of Appellants that the real estate office and restaurant are not common facilities by virtue of general statutory construction, the specific non-unit requirement, and the principle that underlies the exemption of common facilities.

First, "[t]he question of entitlement to an exemption is a mixed one of law and fact and absent any abuse of discretion or a lack of supporting evidence the decision of the trial judge is binding on [the Commonwealth] Court." *Appeal of Planned Parenthood Association of Bucks County,* 55 Pa. Cmwlth. 195, 423 A.2d 760, 761 (1980) (internal citation omitted); *see also* Pa. Const. Art. 8 § 2(a). Presently, the trial court reasoned that the real estate office and restaurant were run by outside corporations with exclusive control and for the exclusive use of a third party entity other than the Association. Additionally, the trial court gave credence to the fact that Saw Creek property owners do not have unfettered use, control, or dominion over the properties, but rather that the office and restaurant are separately used, occupied, maintained, and controlled for the profit of a **private** entity.

Accordingly, the trial court concluded that the two were not common facilities, but units.

Second, statutory provisions exempting property from taxation are strictly construed and it is the burden of the taxpayer to bring itself within the scope of that exemption. *In the Matter of Tax Assessment of Real Estate of Greater Erie Economic Development Corporation,* 61 Pa.Cmwlth. 144, 433 A.2d 568, 570 (1981); 72 P.S. § 5020–204(a). This construct weighs in favor of finding the restaurant and real estate office as units and, therefore, separately taxable. The burden is upon the restaurant and real estate office to demonstrate that they fit the exemption.

Third, and most importantly, the legislative intent leads one to believe that the two parcels should be considered units based on the definition of "limited common facility" contained in the UPCA. Specifically, a "limited common facility" is defined as "[a] portion of the common facilities allocated by or pursuant to the declaration ... **for the exclusive use of one or more** but fewer than all of the units." 68 Pa.C.S. § 5103 (emphasis added). By referring to "exclusive use" to define a limited common facility, the legislature has strongly implied that a common facility must be devoted solely to the use of the members of the association and their guests. The limited factor relates to the fact that not all of the units within the association must be able to use the facility. However, a common facility would, logically, be considered as being for the exclusive use of all of the units.

In the case at hand, the trial court noted that the restaurant and real estate office are not for the exclusive use of the members of the Association—they are both open to the general public. This contrasts with the generally accepted examples of a common facility dedicated to the exclusive use of residents and their guests, such as a pool, clubhouse, fitness center, and the like. In each of the preceding examples, the facility is for the exclusive use of all the units within the development and not for the general public. As noted by Mr. Justice Castille's well-reasoned dissent, we held in *In re Township of Moon,* 387 Pa. 144, 127 A.2d 361, 364 (1956)

(quoting *West View Borough Municipal Authority Appeal,* 381 Pa. 416, 113 A.2d 307, 309 (1955)), that commercial purposes or business enterprises are a basis for losing tax exempt status, and the test is whether the use is private or public.

The Majority approaches the definition of a unit from another angle. Specifically, drawing from the statutory definition, to be considered a unit, a parcel must be: (1) a physical portion of the property; (2) designated for separate ownership or occupancy; and (3) described in the declaration for the planned community. 68 Pa.C.S. § 5103. The real estate office and restaurant clearly meet each of these requirements based upon the plain language of the statute.

However, the Majority contends that because a unit is designated for separate ownership or occupancy, the definition of a unit can be satisfied only if the owners or lessees are entitled to use the property for themselves and have no obligation to share the property with others. Such an interpretation reads a requirement into the statute that does not exist. Even if that requirement was read into the statute or was reasonable, no obligation exists on the part of either entity to share the property with others. The fact that the two disputed businesses are commercial enterprises means that by their very nature, they desire to attract patrons. However, the power to exclude rests solely with the business owners, who are non-Saw Creek residents. Moreover, none of the residents have, at any time, free and unfettered access to the property; rather, such control is in the hands of the business operators.

The Majority additionally implies that part of its reasoning concerns the alleged purpose of the restaurant and real estate office; namely to benefit the Saw Creek homeowners. *See* Majority Opinion at 444 n. 11, 866 A.2d at 265 n. 11. However, the **alleged** purpose and benefit of the two businesses are not important as to their categorization or definition. Even if the purpose were relevant to the decision, a ten percent discount to residents at the restaurant hardly qualifies as being for the benefit of Saw Creek residents. More important is that non-Saw Creek residents receive the benefit of operat-

ing a commercial enterprise, and other non-Saw Creek residents are not excluded from the property. Further, the proprietors of the businesses could choose to exclude Saw Creek residents, or anybody, from entering the restaurant. This stands in contrast to the typical examples of a common facility such as a clubhouse, pool, fitness center, and the like, which are all for the exclusive use of the residents and their guests.

Accordingly, the two properties satisfy the plain and clear definition of a unit and, therefore, do not meet the definition of a common facility. Moreover, logically, a restaurant and real estate office do not constitute the traditional type of operations that fall within the scope of a common facility for a planned association. Therefore, I respectfully dissent from the determination of the Majority and conclude that the real estate office and restaurant are not common facilities. Thus, they should not be exempt from taxation pursuant to the UPCA.

Justice CASTILLE joins this dissenting opinion.