LOCUST LAKE VILLAGE PROP-
ERTY OWNERS ASSOCIA-
TION, INC., Appellant

v.

MONROE COUNTY BOARD OF AS-
SESSMENT APPEALS, Monroe
County, Tobyhanna Township, and
Pocono Mountain School District.

Commonwealth Court of Pennsylvania.

Argued Oct. 30, 2007.
Decided Jan. 4, 2008.

Gregory D. Malaska, Stroudsburg, for appellant.

Mark S. Love, Tannersville, for appellees, Monroe County Board of Assessment Appeals and Monroe County.

Michael A. Gaul, Bethlehem, for appellee, Pocono Mountain School District.

BEFORE: SMITH–RIBNER, Judge, and LEAVITT, Judge, and KELLEY, Senior Judge.

OPINION BY Judge LEAVITT.

The Locust Lake Village Property Owner's Association, Inc. (Association) appeals the order of the Court of Common Pleas of Monroe County (trial court) denying the Association's claim for a retrospective refund of taxes paid on land owned by the Association. The trial court granted judgment to the Monroe County Board of Assessment Appeals, Monroe County, Tobyhanna Township, and Pocono Mountain School District (collectively, Taxing Authorities) because it held that a refund could not be issued in any tax year where the Association had not challenged its assessment. Finding no error in the trial court's construction of the applicable taxing statutes, we affirm.

Locust Lake Village is a planned community in Monroe County governed by the Pennsylvania Uniform Planned Community Act (Planned Community Act), 68 Pa. C.S. §§ 5101–5414. Locust Lake consists of individually owned homes and common areas owned by the Association for the benefit of the homeowners. These common areas owned by the Association are made up of 36 parcels of land consisting of green space, access drives to a beach, parking and an office building. The 36 parcels were individually assessed at values ranging from $2,100 to $5,000.

The Planned Community Act provides that "common facilities" owned by a planned community association are exempt from real estate taxation and assessment. 68 Pa.C.S. § 5105(b).[1] In general, common facilities are areas owned by a homeowners' association that are used and enjoyed by the homeowners.[2] As explained

1. It provides:

Taxation and assessment.-If there is a unit owner other than a declarant, each unit must be separately taxed and assessed. The value of the unit shall include the value of that unit's appurtenant interest in the common facilities, excluding convertible or withdrawable real estate. The following shall apply:

(1) Except as provided in paragraph (2), *no separate assessed value shall be attributed to and no separate tax shall be imposed*

*against common facilities* or controlled facilities.

68 Pa.C.S. § 5105(b) (emphasis added).

2. Section 5103 defines "common facilities" as follows:

"Common Facilities." Any real estate within a planned community which is owned by the association or leased to the association. The term does not include a unit.

68 Pa.C.S. § 5103.

by our Supreme Court in *Saw Creek Community Association, Inc. v. County of Pike,* 581 Pa. 436, 438, 866 A.2d 260, 261 (2005), "common facilities" can be "roads, ponds, green areas, water tower ... as well as the community building's recreational facilities." The individual homes, or "units," are defined as a "physical portion of the planned community designated for separate ownership or occupancy...." 68 Pa.C.S. § 5103.[3] The assessment value of each "unit" includes that unit's "appurtenant interest in the common facilities." 68 Pa.C.S. § 5105(b). Accordingly, there is no separate taxation of the planned community's "common facilities" because the value of those common facilities is included in the assessment of each unit in the planned community.

On August 20, 2003, the Association filed an assessment appeal for tax year 2004. It argued that all 36 parcels owned by the Association were "common facilities" within the meaning of Section 5105(b) of the Planned Community Act and entitled to a zero-tax assessment. As part of its assessment appeal, the Association requested a refund of the real estate taxes paid on the 36 parcels for tax years 2001 to 2003.

Following a hearing, the Board granted the appeal with respect to 35 of the 36 parcels, which were assessed at $0.00 for tax years 2004 and forward. However, the Board denied the assessment appeal for one parcel, Lot 36, which was used to house the Association's administrative office, in part, and to generate rental income from a lease to a third party, not a homeowner. The Board believed that because Lot 36 was not used by the homeowners, it was not a "common facility" within the meaning of the Planned Community Act. The Board did not decide the Association's claim for a retrospective refund for tax years 2001 to 2003.

The Association then sent a written demand to the Taxing Authorities seeking a refund of real estate taxes paid for tax years 2001 to 2003 on the 35 parcels for which a zero-tax assessment had been established by the Board for tax year 2004. The Association also filed an appeal of the Board's denial of its assessment appeal with respect to Lot 36. In its assessment appeal, the Association included a count under Section 1 of the Act of May 21, 1943, P.L. 349, *as amended,* 72 P.S. § 5566b (commonly known as the Tax Refund Law), which provides that, within three years of payment, a taxpayer may seek a refund of taxes paid to which a local taxing authority is not legally entitled.[4] The Association requested a retrospective refund of real estate taxes paid for all 36 parcels, with interest, for tax years 2001 to 2003.

The Taxing Authorities filed preliminary objections in the nature of a demurrer to the Association's request for a refund of real estate taxes under the Tax Refund Law. The Taxing Authorities argued that the Association could have filed an assessment appeal as early as 1997 when the Planned Community Act's tax exemption for the Association's common facilities became effective. The Association did not appeal, however, until 2004. The Taxing Authorities argued that to grant the Association relief under the Tax Refund Law would grant it a retrospective assessment,

---

**3.** Section 5103 defines "unit" as follows:

A physical portion of the planned community designated for separate ownership or occupancy, the boundaries of which are described pursuant to section 5202(5) (relating to contents of declaration; all planned communities) and a portion of which may be designated by the declaration as part of the controlled facilities.

68 Pa.C.S. § 5103.

**4.** The text of Section 1 of the Tax Refund Law is found in n. 9, *infra.*

which is not authorized. Stated otherwise, the Taxing Authorities argued that the Tax Refund Law does not authorize retrospective tax refunds in a case where a landowner has failed to challenge its assessment.

The trial court sustained the preliminary objections of the Taxing Authorities. The trial court focused on the provision in the Tax Refund Law that states that a taxpayer is not entitled to a tax refund where another statutory remedy is available. The trial court reasoned that the Association had such a remedy under The Fourth to Eighth Class County Assessment Law, Act of May 21, 1943, P.L. 571, *as amended,* 72 P.S. §§ 5453.101–5453.706 (Assessment Law), in the form of an assessment appeal, which the Association could have filed during any tax year subsequent to the 1997 effective date of the Planned Community Act. The Association did not pursue this remedy and, thus, the trial court held that the Association was precluded from seeking a refund under the Tax Refund Law.[5]

The Association then filed a motion for summary judgment in its assessment appeal with respect to Lot 36. On December 27, 2006, the parties entered into a stipulation agreeing that, under *Saw Creek,* 581 Pa. 436, 866 A.2d 260, Lot 36 was a common facility entitled to a zero-tax assessment for the 2004 tax year and forward.[6] As a result of this agreement, the only remaining issue was whether the Association was entitled to a retrospective refund of taxes paid on Lot 36 for tax years 2001 to 2003.

On February 2, 2007, the trial court denied the Association's motion for summary judgment on its request for a retrospective tax refund under the Tax Refund Law. In doing so, the trial court applied the same rationale used to dismiss the Association's requested refund with respect to the other 35 parcels.[7]

■ The present appeal followed.[8] The Association asserts that the trial court erred in holding that the Association was

---

5. The Association filed an appeal with this Court from the trial court's order sustaining the Taxing Authorities' preliminary objections. This Court quashed the appeal as interlocutory on the basis that the assessment appeal with respect to Lot 36 remained unresolved and pending. As a result, the parties continued to litigate the Association's assessment appeal on Lot 36.

6. *Saw Creek* established that a restaurant and sales office owned by a homeowners' association constituted "common facilities" just like the ponds, green areas and roads in the community. The Supreme Court held that it was not essential that homeowners have "free and unfettered access," to the office and restaurant in order for the properties to be "common facilities." *Id.* at 441, 866 A.2d at 263. The only point essential to finding property to be a common facility is that the property not be a "unit," *i.e.,* a property used solely by the owner without obligation "to share … with others." *Saw Creek,* 581 Pa. at 444, 866 A.2d at 264. The association leased the restaurant not for the exclusive use of the lessees, but so

lessees could use the property to benefit the residents of Saw Creek. Here, the Association and Taxing Authorities stayed the appeal on Lot 36 pending the Supreme Court's decision in *Saw Creek.*

7. On March 13, 2007, at the request of counsel for the Association, the trial court entered an order clarifying its order denying the Association's motion for summary judgment. Therein, the trial court stated that Lot 36 was entitled to a zero-tax assessment effective for the 2004 tax year, based on the parties' stipulation. The trial court further stated that the entry of the clarification order concluded the litigation and constituted a final order in this matter.

8. Our scope of review is limited to determining whether the trial court committed an error of law or abused its discretion. *Lincoln Philadelphia Realty Associates I v. Board of Revision of Taxes of City and County of Philadelphia,* 563 Pa. 189, 204 n. 11, 758 A.2d 1178, 1187 n. 11 (2000).

precluded from seeking a refund under the Tax Refund Law on the 36 parcels held to be "common facilities" and appropriately assessed at $0.00. The Association asserts that the remedies in the Assessment Law and the Tax Refund Law are complementary, not exclusive of each other. For the reasons that follow we will affirm the trial court.

■ We begin with a review of the Tax Refund Law. Section 1 provides that a taxpayer is entitled to request a refund of taxes paid in the previous three years to which a local taxing authority was not legally entitled. 72 P.S. § 5566b(a).[9] However, a taxpayer cannot claim a refund under the Tax Refund Law where that taxpayer *had or has* a remedy available under any other statute. Section 1(b) of the Tax Refund Law states as follows:

(b) The right to *a refund afforded by this act may not be resorted to in any case in which the taxpayer involved had or has available under any other statute, ordinance or resolution, a specific remedy by way of review, appeal, refund or otherwise,* for recovery of moneys paid as aforesaid, unless the claim for refund is for the recovery of moneys paid under a provision of a statute, ordinance or resolution subsequently

held, by final judgment of a court of competent jurisdiction, to be unconstitutional, or under an interpretation of such provision subsequently held by such court, to be erroneous.

72 P.S. § 5566b(b) (emphasis added). The Taxing Authorities assert that the Association *had or has* a specific remedy by way of an assessment appeal.

■ We turn, then, to a review of the mechanics of an assessment appeal. A taxpayer challenges its assessment by filing an appeal with the board of assessment appeals. *See* Section 701 of the Assessment Law, 72 P.S. § 5453.701(b) ("[a]ny person aggrieved by any assessment whether or not the value thereof shall have been changed since the preceding annual assessment, or any taxing district having an interest therein, may appeal to the board for relief"). If unsuccessful before the board, a taxpayer "who may feel aggrieved by the last or any future assessment or valuation of his real estate or taxable property, may appeal the decision" of the board of assessment appeals to the court of common pleas. Section 518.1 of the General County Assessment Law, Act of May 22, 1933, P.L. 853, *added by* the Act of December 28, 1955, P.L. 917, *as amended,* 72 P.S. § 5020–518.1.[10] The Assessment Law also provides that

**9.** Section 1 of the Tax Refund Law provides in pertinent part that:

(a) *Whenever any person* or corporation of this Commonwealth has paid or caused to be paid, or hereafter pays or causes to be paid, into the treasury of any political subdivision, directly or indirectly, voluntarily or under protest, any taxes of any sort ... to *which the political subdivision is not legally entitled; then,* in such cases, the proper authorities of the political subdivision, upon the filing with them of a written and verified claim for the refund of the payment, are hereby directed to make, out of budget appropriations of public funds, *refund of such taxes ... to*

*which the political subdivision is not legally entitled.* Refunds of said moneys shall not be made, unless a written claim therefor is filed, with the political subdivision involved, within three years of payment thereof.

72 P.S. § 5566b(a) (emphasis added).

**10.** In Pennsylvania, the assessment of real estate taxes is governed by the General County Assessment Law, and by the assessment law applicable to the particular class of county. *Green v. Schuylkill County Board of Assessment Appeals,* 565 Pa. 185, 194, 772 A.2d 419, 425 (2001). In this case, the assessment law applicable to Monroe County is the

so long as an appeal is pending before the board or before a court ... the appeal will also be taken as an appeal by the taxpayer on the subject property for any valuation for any assessment subsequent to the filing of such appeal with the board and prior to the determination of the appeal by the board or the court.

Section 704(f) of the Assessment Law, 72 P.S. § 5453.704(f). Thus, an assessment appeal not decided before the next tax year effects an automatic appeal of each assessment done after the tax year in which the appeal commences. The filing of an assessment appeal does

> not prevent the collection of taxes based on the assessment complained of, but in case the same shall be reduced, then the excess shall be returned to the person or persons who shall have paid the same....

Section 704(e) of the Assessment Law, 72 P.S. § 5453.704(e). However, upon final disposition of the appeal, the taxpayer is entitled to a refund, together with interest thereon, as "a legal set off or credit against any future taxes assessed against the [taxpayer] by the same taxing district...." *Id.*

██ It is the responsibility of the taxpayer to challenge an assessment in the year the assessment is issued in order to avoid the imposition of improper taxes. Indeed, the Pennsylvania Supreme Court has explained that

> [i]f no appeal is taken from the assess-ment of taxes within the time allowed by law *it becomes binding and conclusive* [, and] neither the common pleas nor an appellate court can afford any relief.

\* \* \*

Such a result "is salutary because the revenue base of taxing bodies should not be left open indefinitely" to retrospective claims.

*Lincoln Philadelphia Realty Associates I v. Board of Revision of Taxes of City and County of Philadelphia,* 563 Pa. 189, 210–211, 758 A.2d 1178, 1190 (2000) (quotation omitted) (emphasis added). This principle applies not only where the taxpayer challenges the amount of an assessment but also where the taxpayer claims to be exempt from taxation. *See Academy Plaza Associates, Ltd. v. Board of Revision of Taxes, City of Philadelphia,* 94 Pa. Cmwlth. 517, 503 A.2d 1101, 1102–03 (1986) (noting that a court has no jurisdiction to resurrect the question of a real property tax exemption).

In sum, Section 704 of the Assessment Law, 72 P.S. § 5453.704, provided the Association with a statutory remedy to contest the assessments on the 36 parcels in each year for which it now seeks a refund, *i.e.,* 2001 to 2003. Indeed, the Association effectively used this remedy and ultimately received a zero-tax assessment in accordance with Section 5105(b) of the Planned Community Act for the tax years 2004 and forward.

By asserting a claim for a retrospective tax refund under the Tax Refund Law, the Association, in effect, seeks a retrospective assessment on the 36 parcels for three years preceding its appeal in 2003. However, as has been explained by our Supreme Court, an unchallenged assessment of taxes is conclusive and binding. *Lincoln Philadelphia Realty Associates I,* at 210, 758 A.2d at 1190. The Association's remedy under the Assessment Law was complete and would have afforded the same relief it now seeks under the Tax Refund Law. This remedy under the Assessment Law forecloses the Association's right to invoke the Tax Refund Law and,

Fourth to Eighth Class County Assessment Law.

thus, we affirm the trial court's holding that the Association was not entitled to a retrospective tax refund under the Tax Refund Law for tax years 2001 to 2003.

■ The Association next contends that, even if it had a statutory remedy, it is entitled to seek a refund under the Tax Refund Law because the imposition of real estate taxes on the Association's 36 parcels was based on the Taxing Authorities' erroneous interpretation of the Planned Community Act.[11] The Association argues that, under the terms of the Planned Community Act, the Taxing Authorities had an affirmative obligation to reclassify common areas and adjust their assessments in accordance with the Planned Community Act. Since the Taxing Authorities did not do so, the Association asserts it may invoke the Tax Refund Law.

The Association relies upon Section 1 of the Tax Refund Law, which states that a taxpayer may seek a refund if "the claim for refund is for the *recovery of moneys paid* under a provision of a statute, ordinance or resolution *subsequently held ... to be erroneous.*" 72 P.S. § 5566b(b) (emphasis added). The Association argues that the trial court's holding has established that the Taxing Authorities erroneously assessed the 36 parcels. However, the error was found for the tax years 2004 and forward. In essence, the Association contends that it was the Taxing Authorities' burden to investigate and determine, on their own initiative, whether the 36 parcels were exempt from real estate taxa-

tion lest they "erroneously" assess and tax common facilities. The Association's position lacks merit.

■ "Taxation of property is the rule; therefore, statutory exceptions must be strictly construed." *Borough of Homestead v. St. Mary Magdalen Church,* 798 A.2d 823, 828 (Pa.Cmwlth.2002). It is well settled that the taxpayer claiming entitlement to an exemption bears the burden of proof. *See Alliance Home of Carlisle v. Board of Assessment Appeals,* 591 Pa. 436, 467, 919 A.2d 206, 225 (2007) ("the property of the taxpayer ... is presumed to be taxable and the affirmative burden, in the first instance, rests upon the taxpayer to prove entitlement to exemption"). Indeed, "the burden of proof usually is allocated to the party possessing facts or evidence uniquely within its knowledge." *Lawrence G. Spielvogel, Inc. v. Cheltenham,* 144 Pa. Cmwlth. 510, 601 A.2d 1310, 1316 (1992).

Local taxing authorities may not tax properties that are "common facilities" as defined in the Planned Community Act. However, this duty arises only after it has been established that the property in question meets the statutory requirements of a "common facility."[12] A review of the Association's own assessment appeal is instructive on this point. The Association properly initiated an assessment appeal for tax year 2004. In that assessment appeal, the Association assumed the evidentiary burden of proving that all 36 properties met the definition of a "common facility" under the Planned Community Act. To

11. We do not agree with the Association's premise. Regardless of the reason for a taxing authority's receipt of taxes to which it is not entitled, the existence of another statutory remedy forecloses use of the remedy in the Tax Refund Law. Here, the taxes on the 36 parcels collected from 2001 to 2003 were not illegal because they were collected in accordance with their assessments, which are binding.

12. The Taxing Authorities were obligated to collect taxes in accordance with the tax assessment applicable to the relevant tax year. Absent a change or modification of the relevant tax assessment, the Taxing Authorities would have been in error if they had collected taxes inconsistent with the applicable assessments.

that end, the Association introduced evidence that the 36 properties were located within the planned community, owned or leased by the Association, and that they were not "units," used solely by the owner with no obligation "to share ... with others." *Saw Creek*, 581 Pa. at 444, 866 A.2d at 264. In sum, the Association initiated the inquiry into the taxability of the 36 parcels and assumed the evidentiary burden of proving that they were "common facilities."

It is the Association that has erroneously interpreted the Planned Community Act as placing the burden on the Taxing Authorities to investigate, on their own initiative, the status of each parcel in a planned community as either a "unit" or a "common facility." This interpretation of the Planned Community Act is strained and contrary to all known precedent that places the burden squarely on the taxpayer to prove its right to a tax exemption.

Accordingly, we will affirm the trial court's conclusion that the Association is not entitled to seek a retrospective refund under the Tax Refund Law.[13]

Judge SMITH–RIBNER dissents.

### ORDER

AND NOW, this 4th day of January, 2008, the order of the Court of Common Pleas of Monroe County dated March 13, 2007, in the above captioned matter is hereby AFFIRMED.

---

**13.** In response to the Association's appeal, the School District asserts that the trial court lacked jurisdiction over the Association's claim under the Tax Refund Law, and that the Association lacked standing to file the present appeal with this Court because it prevailed in its assessment appeal before the Board. However, we need not reach these issues in light of our disposition of the Association's issues.