J-A14018-18

2018 PA Super 240

| | | |
|---|---|---|
| RUTHANN HACKETT | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| INDIAN KING RESIDENTS | : | No. 3600 EDA 2017 |
| ASSOCIATION | : | |

Appeal from the Judgment Entered November 21, 2017
In the Court of Common Pleas of Chester County Civil Division at No(s):
2014-12059

BEFORE:   GANTMAN, P.J., SHOGAN, J., and PLATT*, J.

OPINION BY SHOGAN, J.:                    **FILED AUGUST 29, 2018**

This is an appeal by Plaintiff-Appellant, Ruthann Hackett, following a

jury's defense verdict in favor of Appellee, Indian King Residents Association

("IKRA").  Following our careful review, we affirm.

Appellant sued to recover for injuries from a fall caused by branches on

steps in a common area leading to her townhouse[1] on January 30, 2013.  N.T.,

7/31/17, at 27.  Allegedly, the branches fell on January 30, 2013; Appellant

testified that she could not see them in the dark as she climbed the steps that

evening.  *Id*. at 35.  The townhouse is located in Indian King, a mixed

---

[1]  The townhouse was owned by Appellant's husband, from whom she was
divorced at the time of trial.  N.T., 7/31/17, at 28.  Appellant had resided
there from 2010 through 2016.  *Id*. at 28, 46–47.

---

*   Retired Senior Judge assigned to the Superior Court.

townhome/single-family-home community in West Chester, Chester County, Pennsylvania. N.T., 7/31/17, at 17–18. IKRA is a homeowners' association created by a Declaration of Covenants, Conditions and Restrictions ("Declaration")[2] under the Uniform Planned Community Act ("UPCA"), 68 Pa.C.S. § 5101–5414. In the two years following the injury, Appellant underwent three surgeries. N.T., 7/31/17, at 30–34.

The trial court summarized the procedural history as follows:

A two-day trial concluded August 1, 2017 with the jury returning a verdict of "no negligence" in favor of IKRA. (Vol. II, 215:11-20) [Appellant] filed timely a post-trial motion seeking a new trial, which was argued and then denied on October 12, 2017. [Appellant] filed timely an appeal on October 18, 2017 from the order denying post-trial motion relief.[3] [Appellant] next filed a Concise Statement of the Matters Complained of on Appeal preserving two issues. First, [Appellant] maintains that we

_____

[2] While the Declaration is located in the Reproduced Record at pages 355a–367a, it also is included in the certified record as an attachment labeled Exhibit B to IKRA's brief in opposition to Appellant's post-trial motion. Brief of IKRA in Support of Answer to Plaintiff's Motion for Post-Trial Relief ("Docket Entry 32"). IKRA also notes its attachment to its memorandum of law submitted to the trial court in support of IKRA's motion for compulsory nonsuit. N.T., 8/1/17, at 110; Docket Entry 32 at 11 n.7.

[3] Appellant improperly purported to appeal from the October 12, 2017 order denying her post-trial motion. An appeal from the denial of a post-trial motion is interlocutory as it is not a final appealable order. **Sagamore Estates Property Owners Association v. Sklar**, 81 A.3d 981, 983 n.3 (Pa. Super. 2013). However, Appellant subsequently filed a praecipe to enter judgment in this matter, and the Chester County Prothonotary entered judgment on November 21, 2017. The entry of judgment sufficiently perfects our jurisdiction, and we may proceed to consider the appeal on its merits. **Id**.; Pa.R.A.P. 905(a)(5) ("A notice of appeal filed after the announcement of a determination but before the entry of an appealable order shall be treated as filed after such entry and on the day thereof."). We have corrected the caption to reflect that the appeal lies from the November 21, 2017 judgment.

improperly found [Appellant] to be a licensee, rather than an invitee, in the common area and therefore gave an improper standard of care charge to the jury. Second, [Appellant] maintains that we improperly denied her motion to remove the question of factual cause from the verdict sheet.

Trial Court Opinion, 12/6/17, at 1.

Appellant raises the following issues on appeal:

1.    Question: Did the trial court err in charging the jury that Appellant was a licensee, over Appellant's objection and position that Appellant was an invitee?

2.    Question: Did the trial court err in failing to read a specialized instruction, based on Appellee's obligations as a property manager?

3.    Question: Did the trial court err when in submitting a verdict form to the jury which included a question regarding the factual cause of Appellant's injury, when Appellee's medical expert conceded that Appellant had been injured, as a result of the subject incident?

Appellant's Brief at 4.

Our standard of review in denying a motion for a new trial is to decide "whether the trial court committed an error of law which controlled the outcome of the case or committed an abuse of discretion." *Stapas v. Giant Eagle, Inc.*, 153 A.3d 353, 359 (Pa. Super. 2016), *appeal denied*, 171 A.3d 1286 (Pa. 2017). In order for liability to be imposed upon a defendant in a negligence action, the plaintiff must establish the existence of a duty or obligation recognized by law, a breach of that duty, a causal connection between the defendant's breach of that duty and the resulting injury, and actual loss or damage suffered by the complainant. *T.A. v. Allen*, 669 A.2d

360, 362 (Pa. Super. 1995); **Reilly v. Tiergarten Inc.**, 633 A.2d 208, 210 (Pa. Super. 1993). "Where there is no duty of care, there can be no negligence." **T.A.**, 669 A.2d at 362.

Appellant first argues that the trial court erred in concluding she was a licensee, not an invitee, when she fell on IKRA property. Appellant's Brief at 18.[4] Her theory is that IKRA's business is that of property manager, and as such, it is responsible for keeping common areas safely maintained. **Id**. at 19. She avers that by virtue of paying "maintenance fees," she became an invitee. **Id**. Appellant suggests the trial court "simply got the facts wrong." **Id**.

Appellant also posits that she was an invitee pursuant to the "Statute Governing Specialized Duty Owed by Condominium Associations to Residents." Appellant's Brief at 21. She refers this Court to the Uniform Condominium Act ("UCA"), 68 Pa.C.S. §§ 3101 to 3414, suggesting that

_____

[4] We note Appellant's noncompliance with the briefing requirements set forth in the Pennsylvania Rules of Appellate Procedure, specifically her failure to specify where she preserved issues, Pa.R.A.P. 2117(c), and her failure to include in her brief the trial court opinion and her Pa.R.A.P. 1925(b) statement in violation of Pa.R.A.P. 2111(b) and (d). Issues are waived when they are not addressed in conformance with the rules. **Moses Taylor Hospital v. White**, 799 A.2d 802, 804 (Pa. Super. 2002) (citing **Korn v. Epstein and DeSimone Reporting Group**, 727 A.2d 1130, 1135 (Pa. Super. 1999)); **Hrinkevich v. Hrinkevich**, 676 A.2d 237, 241 (1996). As provided in Pa.R.A.P. 2101, appellate briefs "shall conform in all material respects with the requirements of these rules," and failure to do so may result in the brief being quashed or dismissed. **Id**. While Appellant's briefing deficiencies have placed an additional burden on this Court, we will overlook the omissions where we are able to do so.

- 4 -

IKRA's duty to maintain the common areas is "not affected by whether its residents have actual notice of any defects." Appellant's Brief at at 22 (citing UCA at § 3307).

It is settled law that the "duty of a possessor of land toward a third party entering the land depends upon whether the entrant is a trespasser, licensee, or invitee." *Stapas*, 153 A.3d at 365 (citation omitted). "These are not self-defining terms, and in applying them to a set of circumstances we are guided by the definitions in the Restatement, 2nd, Torts, 1965 §§ 328-343, which have been adopted by Pennsylvania law." *Wiegand by Wiegand v. Mars Nat'l Bank*, 454 A.2d 99, 101 (Pa. Super. 1982) (citations omitted).[5] "Generally, the determination of whether an individual is an invitee, licensee, or trespasser is one of fact for the jury. Where the evidence is insufficient to support an issue, however, it may be appropriate for the court to remove that issue from the jury."[6] *Stapas*, 153 A.3d at 365–366, (citing *Palange v. City of Philadelphia, Law Dept.*, 640 A.2d 1305, 1307 (Pa. Super. 1994)).

A "licensee is a person who is privileged to enter or remain on land only by virtue of the possessor's consent." Restatement (Second) of Torts

---

[5] "Pennsylvania remains a Second Restatement jurisdiction . . . ." *Tincher v. Omega Flex, Inc.*, 104 A.3d 328, 399 (Pa. 2014).

[6] Appellant makes no argument that the jury should have determined her status or that the trial court erred in removing the issue from the jury.

("Restatement"), § 330 Licensee Defined. Comment *h* to Section 330

illustrates those persons included under the status of "licensees:"

> *h. Persons included*. Included under licensees, among others, are three types of persons:
>
>> 1. One whose presence upon the land is solely for his own purposes, in which the possessor has no interest, and to whom the privilege of entering is extended as a mere personal favor to the individual, whether by express or tacit consent or as a matter of general or local custom.
>>
>> 2. The members of the possessor's household, except boarders or paying guests and servants, who, as stated in § 332, Comments *i* and *j,* are invitees.
>>
>> 3. Social guests. Some confusion has resulted from the fact that, although a social guest normally is invited, and even urged to come, he is not an "invitee," within the legal meaning of that term, as stated in § 332. . . . [T]he decisions thus far have been all but unanimous to the effect that the social guest is no more than a licensee.

The Restatement, § 330 cmt. *h*.

A possessor of land is subject to liability to his licensees for physical

harm caused to them only in certain instances, as follows:

> by his failure to carry on his activities with reasonable care for their safety if, but only if,
>
>> (a) he should expect that they will not discover or realize the danger, and
>>
>> (b) they do not know or have reason to know of the possessor's activities and of the risk involved.

The Restatement, § 341.

The duty owed a licensee in Pennsylvania was established by our Supreme Court in **Sharp v. Luksa**, 269 A.2d 659 (Pa. 1970), when it adopted the language of Section 342 of the Restatement. Section 342 addresses dangerous conditions known to the possessor of land. Therein, a possessor of land is subject to liability for physical harm caused to licensees by a condition on the land in designated circumstances only if:

> (a) the possessor knows or has reason to know of the condition and should realize that it involves an unreasonable risk of harm to such licensees, and should expect that they will not discover or realize the danger, and
>
> (b) he fails to exercise reasonable care to make the condition safe, or to warn the licensees of the condition and the risk involved, and
>
> (c) the licensees do not know or have reason to know of the condition and the risk involved.

The Restatement, § 342. The "conjunctive wording of [S]ection 342 indicates that a possessor of land is subject to liability only if all three criteria are present." **Cresswell v. End**, 831 A.2d 673, 677 (Pa. Super. 2003). Moreover, Comment *h* to Section 342 states:

> *h*. A possessor of land who permits licensees to enter is subject to liability for bodily harm caused to them by the dangerous state in which he permits a natural or artificial condition to remain, if, but only if, he not only knows of the condition but also should realize that it involves an unreasonable risk of causing physical harm to the particular licensee harmed thereby. In determining whether the possessor should realize that a known condition involves not only a risk but an unreasonable risk, the character of the invitation or permission is important. A condition, no matter how dangerous to those who come in contact with it, can involve risk to a particular licensee only if he may be expected to encounter it in the exercise of his license. Thus, if a possessor gives to another a license to come upon the land by day, he may

- 7 -

have no reason to expect the licensee to enter by night.  Therefore he may be under no duty to warn the licensee of a condition which would be obvious in daylight. . . .

The Restatement, § 342, cmt *h*.

The Restatement defines an "invitee" as follows:

(1) An invitee is either a public invitee or a business visitor.

(2) A public invitee is a person who is invited to enter or remain on land as a member of the public for a purpose for which the land is held open to the public.

(3) A business visitor is a person who is invited to enter or remain on land for a purpose directly or indirectly connected with business dealings with the possessor of the land.

Comment

*a. Invitee*.  "Invitee" is a word of art, with a special meaning in the law.  This meaning is more limited than that of "invitation" in the popular sense, and not all of those who are invited to enter upon land are invitees.  A social guest may be cordially invited, and strongly urged to come, but he is not an invitee. (See § 330, Comment *h*.)  Invitees are limited to those persons who enter or remain on land upon an invitation which carries with it an implied representation, assurance, or understanding that reasonable care has been used to prepare the premises, and make them safe for their reception.  Such persons fall generally into two classes: (1) those who enter as members of the public for a purpose for which the land is held open to the public; and (2) those who enter for a purpose connected with the business of the possessor.  The second class are sometimes called business visitors; and a business visitor is merely one kind of invitee.  There are many visitors, such as customers in shops, who may be placed in either class.

The Restatement, § 332.

IKRA responds, similarly to the trial court, that the duty owed to

Appellant, in that it depended on her status as an entrant to the land, was as

- 8 -

a licensee. IKRA's Brief at 18. IKRA maintains that Appellant entered the land for her own benefit and pleasure, not for any purpose connected with IKRA's business. *Id*. at 19. Moreover, IKRA suggests that Appellant was privileged to enter the land solely by virtue of IKRA's permission, not invitation, and thus, is a licensee. *Id*. at 20.

IKRA describes Appellant, a resident of the community, as having "longstanding permission to use the common areas," additional support for her status as a licensee. IKRA's Brief at 22. IKRA underscores its status as a property owner by virtue of the UPCA. IKRA's Brief at 23 (citing UPCA, 68 Pa.C.S. § 5103). IKRA suggests that the Declaration executed upon its inception reveals that owners/residents "have a right and easement of enjoyment" to the common areas. IKRA's Brief at 25.

In addressing this issue, the trial court advised that because there was no allegation that Appellant was a trespasser, it looked to whether Appellant was a licensee or invitee. Trial Court Opinion, 12/6/17, at 3. The court examined the Restatement and concluded Appellant was a licensee on the property when she fell. *Id*. at 4. It reasoned Appellant was a resident of the community, and she used the common area with IKRA's permission, not by invitation. *Id*. at 3. Referencing IKRA's Declaration, the trial court determined that the Declaration granted residents an easement of enjoyment regarding common areas, and the easement essentially conferred permission to each resident to use the common areas. *Id*. at 4.

The trial court did not err in finding that Appellant was a licensee when she entered the common area. It is undisputed that Appellant was not a trespasser at the time she fell. Initially, we reject outright Appellant's claim that she was an invitee pursuant to the Uniform Condominium Act. Appellant's Brief at 21–22. Appellant cites no case law in support of her position, but more significantly, we note the inapplicability of the UCA. IKRA is not a condominium association; it is a homeowners' association under the UPCA, as noted *supra*. The UCA has no relevance to this case.

Further, Appellant was not an invitee because she was not a business visitor at the Indian King Community nor on the property by invitation or for a purpose related to IKRA's business dealing. The Restatement, § 332. Rather, she was returning to her home after visiting a relative. N.T., 7/31/17, at 35, 48. Appellant likewise was not a public invitee. The Restatement, § 332. There was no evidence offered that Appellant entered the property upon invitation or for a purpose for which land is held open to the public. As noted by the trial court, Comment *b* to Section 332 of the Restatement "addresses the requirement of an invitation to distinguish an invitee from a licensee." Trial Court Opinion, 12/6/17, at 3.

> *b*. *Invitation and permission*. Although invitation does not in itself establish the status of an invitee, **it is essential to it**. An invitation differs from mere permission in this: an invitation is conduct which justifies others in believing that the possessor desires them to enter the land; permission is conduct justifying others in believing that the possessor is willing that they shall enter if they desire to do so. . . .

> Mere permission, as distinguished from invitation, is sufficient to make the visitor a licensee, as stated in § 330; **but it does not make him an invitee** . . . .

The Restatement § 332, cmt. *b* (emphases added). Appellant's entrance to the land did not result from invitation, it was pursuant to IKRA's permission. "The distinction between invitation and permission forms the basis for distinguishing an invitee from a licensee." ***Stapas***, 153 A.3d at 366.

We also look to the Declaration, executed on June 22, 1987, which governs IKRA. Pursuant to the Declaration, residents "have a right and easement of enjoyment in and to the Common Area," which is defined as "all real property . . . owned by [IKRA] for the common use and enjoyment of the owners." Declaration, Article II (Property Rights), Section 1; Article I (Definitions), Section 4. Appellant admitted that she had been a permanent resident of Indian King beginning in 2010 when she married her husband and continuing through 2016 until her divorce. N.T., 7/31/17, at 28, 47. As the trial court determined:

> [Appellant's husband's] townhome is located at 118 Denbigh Terrace in the Indian King development, which is a planned community. A planned community is an area of land consisting of homes that are individually owned as well as common areas that are owned by an association consisting of all of the homeowners in the community. Saw Creek Cmty. Ass'n v. County of Pike, 866 A.2d 260, 263(Pa. 2005). [Appellant's husband] as a homeowner in the Indian King development, is a member of the community and of the association, IKRA, which owns the common areas within the development. The community is governed by a Declaration executed on June 22, 1987. Pursuant to the Declaration, residents "have a right and easement of enjoyment in and to the Common Area" of the subject premises. (Declaration, p. 3) There is no evidence that homeowners have

leases with IKRA or pay rent for use of the common area. There is no evidence that [Appellant] had a lease with her husband or IKRA and or that she paid rent.

Trial Court Opinion, 12/6/17, at 2. We agree with the court that Appellant had permission, by virtue of the Declaration, to use the common areas. We adopt the trial court's conclusion, as follows:

When [Appellant] fell on steps in the common area, she was a licensee on the property, and not an invitee, guest[,] or tenant. She was a resident of the Indian King Community. She used the common area with permission of IKRA and not by anyone's invitation. The Declaration grants residents an easement of enjoyment as to common areas. The easement is essentially permission granted to each resident to use the common areas. [Appellant] was not invited onto the common area; she was there with implied permission by virtue of the fact that she was a resident. She had long standing permission to use the common area as she saw fit.

*Id*. at 4. Thus, the trial court correctly concluded Appellant was a licensee when she fell, and Appellant's first issue lacks merit.

Appellant's second issue is waived. The Statement of Questions Involved in Appellant's brief avers that the trial court failed to read a specialized instruction based on IKRA's obligations as a property manager. Appellant's Brief at 4. In the argument section of her brief, in a three-paragraph claim, Appellant fails to identify what specialized instruction was foregone. *Id*. at 23. Appellant references "instructions" that "[t]he jury heard" but she fails to identify them. *Id*. There are no references to the record to enable us to discern and analyze Appellant's issue. Further, Appellant fails to support the issue with citation to relevant case law. For

these reasons also, the issue is waived. *Commonwealth v. Perez*, 93 A.3d 829, 838 (Pa. 2014) (claims failing to advance developed argument or citation to supporting authorities and record are waived); *Lackner v. Glosser*, 892 A.2d 21 (Pa. Super. 2006) (arguments which are not appropriately developed, including those where party has failed to cite any authority in support, are waived on appeal); *Phillips v. Lock*, 86 A.3d 906, 920–921 (Pa. Super. 2014) (It is not this Court's responsibility to scour the record for substantiation that issue has been properly raised).

Appellant lastly suggests the verdict sheet should not have "contained a question regarding the factual cause of Appellant's injuries." Appellant's Brief at 24. Appellant states this issue is posed "as a matter of judicial economy" in the event a new trial is granted. *Id*. Appellant acknowledges that the jury found IKRA was not negligent, and therefore, it did not reach the issue of the factual cause of Appellant's injury. *Id*. at 13, 24–25.

We decline to address this claim under these circumstances. Instantly, we have not granted a new trial. Moreover:

> [t]his Court may not provide advisory opinions to address issues that may arise in future cases. *Bindschusz v. Phillips*, 771 A.2d 803, 810 n.4 (Pa. Super. 2001). *See also Sedat, Inc. v. Fisher*, 617 A.2d 1, 4 (1992) ("An advisory opinion is one which is unnecessary to decide the issue before the court, and ... the courts of this Commonwealth are precluded from issuing such advisory opinions."); *U.S. Bank, N.A. v. Pautenis*, 118 A.3d 386, 403 (Pa. Super. 2015) (same).

*Commonwealth v. Enix*, ___ A.3d ___, ___ n.5, 2018 PA Super 181, *5 n.5 (Pa. Super. filed June 26, 2018).

- 13 -

Judgment entered November 21, 2017, is affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 8/29/18