J-A15035-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| VINCULUM, INC | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| GOLI TECHNOLOGIES, LLC | : | No. 2048 EDA 2020 |

Appeal from the Judgment Entered September 22, 2020
In the Court of Common Pleas of Bucks County Civil Division at No(s):
No. 2015-06333

| VINCULUM, INC | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| GOLI TECHNOLOGIES, LLC | : | |
| | : | |
| Appellant | : | No. 2127 EDA 2020 |

Appeal from the Judgment Entered September 22, 2020
In the Court of Common Pleas of Bucks County Civil Division at No(s):
No. 2015-06333

BEFORE:  BOWES, J., STABILE, J., and MUSMANNO, J.

MEMORANDUM BY MUSMANNO, J.:        **FILED NOVEMBER 29, 2021**

Vinculum, Inc. ("Vinculum"), Appellant/Cross-Appellee, and Goli

Technologies, LLC ("Goli"),[1] Appellee/Cross-Appellant, appeal from the

Judgment entered in favor of Vinculum for $32,145, and in favor of Goli for

---

[1] Nagavardha Goli ("Mr. Goli") and his wife are the co-owners of Goli.  N.T., 7/6/20, at 12-13.

$42,525, on its counterclaim, resulting in a net award for Goli in the amount of $10,380.  We affirm.

The trial court set forth the following background underlying this appeal:

> Vinculum and Goli [] are both IT consulting companies. Both parties hire computer software professionals, send those individuals to companies and government agencies in need of such work, and retain a portion of the contractor's wages.  On December 16, 2014, the parties entered into a consulting and non-competition agreement (hereinafter the "Consulting Agreement").

> Under the Consulting Agreement, Goli [] agreed to abide by a non-solicitation clause under which, "Vendor [Goli] and Consultant ["Mr. Goli"] agree not to solicit or conduct business at Vinculum's Client[, Computer Aid, Inc./Pennsylvania Department of Transportation ("PennDOT"),] for a period of one (1) year from termination of this contract."  Under the Consulting Agreement, for a period of about one year, Goli[,] [] through Vinculum[,] worked full time as a software architect for PennDOT.  At the end of December 2015, Mr. Goli and Goli [] decided to leave Vinculum's employ and began working for PennDOT.

> Shortly thereafter, Vinculum withheld $42,525 in outstanding wages from Mr. Goli and Goli [], filed suit, and moved for a preliminary injunction to prohibit Mr. Goli and Goli [] from working for PennDOT.  Goli [] subsequently filed a counterclaim seeking recovery of the unpaid wages.  Vinculum's request for a preliminary injunction was denied by this [c]ourt on March 28, 2016.

> Following the denial of the preliminary injunction, Goli [] continued working for PennDOT.  About four years later, after the close of discovery, Goli [] moved for partial summary judgment. In response to the arguments raised, the [c]ourt denied the [M]otion on December 19, 2019.  A bench trial was held on July 6, 2020, to rule on both Vinculum and [Goli's] claims.  At the conclusion of the bench trial, this [c]ourt found that the [Consulting Agreement] between Vinculum and Goli [] was enforceable.  As a result of [Goli's] breach, Vinculum was entitled to $32,145 (the amount it would have received had Goli [] been

- 2 -

employed for a one[-]year period through Vinculum). Regarding the counterclaim, this [c]ourt found that Vinculum owed Goli [] $42,525, less the $32,145. Therefore, the net verdict of this [c]ourt was that Vinculum owed Goli [] $10,380. Following the entry of the verdict, both parties filed Motions for Post-Trial Relief and [the trial court] denied both Motions and [J]udgment was entered on the verdict….

Trial Court Opinion, 12/22/20, at 1-2. Thereafter, both parties filed timely Notices of Appeal, followed by court-ordered Pa.R.A.P. 1925(b) Concise Statements of Matters complained of on appeal. This Court subsequently consolidated the appeals, designating Vinculum as the lead appellant.

Vinculum presents the following questions for our review:

1. Whether the [t]rial [c]ourt erred as a matter of law by finding that [Vinculum] proved the elements of its claim for breach of contract, and yet refusing to enforce the injunctive relief stipulated in the parties' [Consulting Agreement]?

2. Whether the [t]rial [c]ourt erred as a matter of law by finding that [Vinculum] proved the elements of its claim for breach of contract, and yet refusing to enforce the nondiscretionary attorney's fees provision in the [Consulting Agreement]?

3. Whether the [t]rial [c]ourt erred as a matter of law by applying case law which addressed employee restrictive covenants, whereas [Goli] was not an employee, but a competing company?

4. Whether the [t]rial [c]ourt erred as a matter of law by refusing to enforce the contractual injunctive relief clause where (a) the elements of injunctive relief were satisfied through the evidence at trial[;] (b) an injunction was appropriate because damages were impossible to calculate[;] (c) an injunction was appropriate because [Goli] concealed info[rmation] that would have made damages calculable[;] (d) an injunction would not deprive [Goli] of [the] right to work at PennDOT, through [Vinculum;] (e) an injunction would not deprive [Goli] of its right to place

- 3 -

consultants at PennDOT under the parties' contract[;] (f) an injunction would not deprive [Goli] of the right to work or compete anywhere else in the world, except for PennDOT; (g) an injunction would not deprive [Goli] of [the] right to place IT consultants anywhere else in the world, including other Pennsylvania state agencies[;] and (h) an injunction was the only remedy capable of deterring [Goli's] willful contractual breach?[2]

5. Whether the [t]rial [c]ourt erred as a matter of law by sustaining [Goli's] objections to questions at trial concerning profits beyond one-year post-breach, and thereby imposing an arbitrary one-year limitation on [Vinculum's] damages?

6. Whether the [t]rial [c]ourt erred as a matter of law by not drawing an adverse inference from [Goli's] admissions at trial that it (a) concealed consulting agreements it used to compete with [Vinculum] at PennDOT, and (b) copied the agreements from [Vinculum]?

7. Whether the [t]rial [c]ourt erred as a matter of law by denying [Vinculum's] Motion to Strike Deposition Objections, which was filed to obtain discovery concerning the extent of [Goli's] profits arising from the breach?

Brief for Appellant at 2-3 (footnote added).

Goli presents the following questions for our review:

1. Was [the Consulting Agreement] reasonably related to the protection of a legitimate business interest?

2. Should Vinculum be awarded damages for [Goli's] violation of its non-competition agreement, when Vinculum has failed to prove that the profits obtained by Goli [] during the non-competition period would have otherwise been obtained by Vinculum but for [Goli's] breach?

---

[2] Although Vinculum included this issue in its Statement of Questions Involved, there is no corresponding argument section discussing this question in its brief. It appears the issue was subsumed into Vinculum's first issue.

3.    On [Goli's] successful counterclaim for breach of contract, was pre-judgment interest awardable as of right?

Brief for Appellee at 5.

Preliminarily, we set forth the relevant clause of the Consulting Agreement containing the non-compete agreement:

10. **SOLICITATION AND NON-COMPETITION:** [Goli] and [Mr. Goli] agree not to solicit or conduct business at Vinculum's Client for a period of one (1) year from termination of this contract. Violation of this covenant will result in legal action to prohibit such solicitation and[/]or conducting of business.  The stipulations in this paragraph will survive the termination of this agreement.

[Goli] agrees that the Client [PennDOT] revealed in Addendum Exhibit A, Individual Work Order, or any client introduced by Vinculum to [Goli] or [Goli's] consultant is a client of Vinculum. Once the name of the Client is revealed to [Goli], and for a period of one (1) year thereafter, whether or not the services of [Goli] are engaged by Vinculum, it shall not compete with Vinculum in any manner, either directly or indirectly, through any other vendor or company, whether for compensation or otherwise, or assist any other person or entity to compete with Vinculum with this client or any other Client so revealed to [Goli] with which Vinculum does business.

Should [Goli] breach any of the covenants of solicitation and non-competition, Vinculum shall have the right to immediately terminate this agreement and to seek legal and/or equitable relief, including injunctive relief against [Goli].  [Goli] understands and acknowledges that a breach of this covenant would cause substantial harm to Vinculum, which would be difficult to calculate. Therefore, as liquidated damages, and not a penalty, [Goli] agrees to pay Vinculum as decided by a court of [l]aw for each violation in addition to all damages, costs, including court costs and reasonable attorney fees incurred by Vinculum in enforcing the provisions of this Agreement.  [Goli] further agrees and authorizes Vinculum to withhold payment up to the damages incurred in case of any violation by [Goli] or [Mr. Goli].  It is the intention of the parties that if any court construes any of these covenants or any portion thereof to be illegal[,] void or unenforceable because of its duration or scope, such court shall reduce the duration or scope

of the covenant or provision, and [in] its reduced form, the covenant or provision shall be enforced.

[Goli] agrees that [] [Mr. Goli] [] will represent only Vinculum and [Mr. Goli] will not disclose [Goli's] company name, pay rate to the Client and any other consultant per this clause.

Consulting Agreement, 12/16/14, at 2-3.

In its first issue, Vinculum argues that the trial court erred when it denied its request for injunctive relief, where Vinculum proved that Goli had breached the Consulting Agreement.[3] Brief for Appellant at 13. Vinculum claims, without citation to the record, that Goli breached the Consulting Agreement by placing Mr. Goli and a second consultant at PennDOT. *Id.* According to Vinculum, the trial court's failure to grant the injunction has "granted a license to any company willing to pay a small price for intentionally flouting its own commitment." *Id.*

Goli counters that the trial court properly denied Vinculum's request for a preliminary injunction. Brief for Appellee at 40. Goli asserts that, pursuant to the terms of the Consulting Agreement, the right to injunctive relief had expired before Vinculum filed the instant action. *Id.* at 41 (citing *Hayes v. Altman*, 266 A.2d 269, 271 (Pa. 1970) (holding that "[a]n injunction will not be granted to enforce a restrictive covenant when the restrictive period has

---

[3] We note that Vinculum cites no Pennsylvania case law in support of its claim. *See* Pa.R.A.P. 2119(a) (requiring discussion and citation of authorities deemed pertinent). Vinculum also fails to address the fact that the non-compete clause of the Consulting Agreement expired one year after the termination of the Consulting Agreement.

by its terms expired.")). Goli points to the language in the Consulting Agreement, which barred Goli from soliciting or conducting business for a period of one year from the termination of the Consulting Agreement. *Id.* at 43 (citing Section 10 of the Consulting Agreement). Goli asserts that the trial court's finding that the Consulting Agreement terminated at the end of December 2015 was amply supported by the record. *Id.* (citing N.T., 7/6/20, at 45-46). Thus, Goli contends that the period of non-competition ended in December 2016. *Id.* Goli further claims that pursuant to *Hayes*, Vinculum's remedy for breach of the covenant lies in an action for damages, not injunctive relief in the form of specific performance. *Id.*

"Appellate review of the grant or denial of a permanent injunction is limited to whether the trial court committed an error of law. In reviewing a question of law, our standard of review is *de novo* and our scope of review is plenary." *Wellspan Health v. Bayliss*, 869 A.2d 990, 995-96 (Pa. Super. 2005). Moreover, restrictive covenants in an employment agreement should be strictly construed. *Harry Blackwood Inc. v. Caputo*, 434 A.2d 169, 170 (Pa. Super. 1981).

In this case, the trial court determined that the one-year period set forth in the Consulting Agreement expired after January 2017; therefore, Vinculum was not entitled to an injunction. Trial Court Opinion, 12/22/20, at 5 (citing *Davis v. Buckham*, 421 A.2d 427, 431 (Pa. Super. 1980)). In *Davis*, the covenant not to compete applied for a period of five years, in a specific

geographical area, if the appellant left the physical therapy practice group of which he was a member. ***Davis***, 421 at 429. The appellant in that case left the group in 1970 and violated the non-compete agreement. ***Id.*** The appellees became aware of the breach in 1974 and brought suit in equity seeking to enjoin the appellant from practicing. ***Id.*** Following a hearing which took place in 1977, the chancellor entered a decree *nisi* and adjudication in 1978, and *inter alia*, entered an order enjoining the appellant from engaging in the practice of physical therapy in the restricted area for a period of five years *following* the entry of the decree *nisi.* ***Id.***

On appeal, this Court concluded that the chancellor erred because "[a]n injunction will not be granted to enforce a restrictive covenant when the restrictive period has by its terms expired." ***Id.*** at 431 (quoting ***Hayes v. Altman***, 266 A.2d 269, 271 (Pa. 1970)). This Court explained that, by enjoining the appellant from practicing for five years after the entry of the decree, the chancellor essentially extended the covenant not to compete from a five-year term to a thirteen-year term. ***Id.*** This Court further noted that by doing so, the chancellor went against the norm of courts interpreting the terms of restrictive covenants narrowly, and instead erroneously expanded the terms of the covenant. ***Id.*** at 432.

In the instant case, the covenant not to compete was limited to one year after December 2015, when Goli left Vinculum. N.T., 7/6/20, at 40.[4] Given that the noncompete portion of the Consulting Agreement was limited to a single year, the effective period ended in December 2016. Thus, to extend injunctive relief beyond that time period would be an improper expansion of the terms of the noncompete agreement. We therefore conclude that the trial court properly refused to grant injunctive relief beyond December 2016. Consequently, we cannot grant Vinculum relief on this claim.

In its second issue, Vinculum argues that the trial court erred when it refused to award attorneys' fees, as required under the Consulting Agreement, even though the court found that Goli had breached the Consulting Agreement. Brief for Appellant at 16. Vinculum argues that "a court cannot modify the terms of a contract under the guise of interpretation[,] because the written terms are the best indication of the parties' intent." *Id.* at 17 (citing **McMullen v. Kutz**, 985 A.2d 769 (Pa. 2009)).[5] Vinculum compares

---

[4] Mr. Goli testified that he worked pursuant to the Consulting Agreement through the end of 2015. N.T., 7/6/20, at 40; **see also id.** at 71 (wherein Vinculum's Director of Legal Affairs testified that Mr. Goli provided his resignation at the end of 2015). Mr. Goli further testified that he began working for PennDOT again in January 2016. **Id.** at 45-46.

[5] Vinculum misstates its claim that the Supreme Court "observed" the above language. Rather, the Supreme Court stated that *the appellant* had made the observation, and not the Court. **McMullen**, 985 A.2d at 773. Ultimately, the Court held that, although parties may contract for a breaching party to pay attorneys' fees, the trial court may consider whether those fees are reasonable. **Id.** at 776-77.

this case to the situation in **McMullen**, a case involving a marriage and property settlement agreement. Brief for Appellant at 16-17. In **McMullen**, Vinculum argues, our Supreme Court upheld the award of attorneys' fees, where there was no dispute as to whether the husband had breached the agreement and the parties had agreed to a fee-shifting agreement. Brief for Appellant at 17. Because the Consulting Agreement contained a provision entitling Vinculum to recover attorneys' fees and costs arising from Goli's breach, Vinculum asserts that the trial court had no basis to override the parties' express agreement. **Id.** However, Vinculum has failed to provide any information or analysis of the attorneys' fees it seeks to collect and the reasonableness of those fees.

Goli counters that, in this case, the trial court found that Vinculum had withheld more money from Goli, than Goli owed to Vinculum. Brief for Appellee at 49. Goli asserts that, although Vinculum won a partial victory on its breach of contract claim against Goli, Judgment ultimately was entered against Vinculum. **Id.** 50. Thus, Vinculum was not a prevailing party and was not entitled to attorneys' fees. **Id.** Finally, Goli argues that the trial court did not err because, despite discovery requests, Vinculum failed to disclose the amount of its attorneys' fees until the day before trial, denying Goli the opportunity to review them. **Id.** at 53-54. Goli argues that, because Vinculum never sought to have evidence of its attorneys' fees admitted, Goli

was unable to object to the same, as reflected by the trial transcript. *Id.* at 54 (citing N.T., 7/6/20, at 133).

"Whether to award attorneys' fees and costs incurred in bringing an action are within the discretion of the trial court, and we will not reverse a trial court's decision on the matter in the absence of an abuse of discretion." ***Regis Ins. Co. v. Wood***, 852 A.2d 347, 349-50 (Pa. Super. 2004); ***see also In re Bridgeport Fire Litig.***, 8 A.3d 1270, 1289 (Pa. Super. 2010) (same). Error "is found where the award is based either on factual findings for which there is no support in the record or legal factors other than those that are relevant to such an award." ***Gilmore by Gilmore v. Dondero***, 582 A.2d 1106, 1108 (Pa. Super. 1990).

> The rationale behind this limited scope of review is sound. It is the trial court that has the best opportunity to judge the attorney's skills, the effort that was required and actually put forth in that matter at hand, and the value of that effort at the time and place involved.

*Id.* at 1108-09. Finally, the burden is on the party claiming the right to attorneys' fees to justify those fees. *Id.* at 1110.

In its Opinion, the trial court explained that its award of attorneys' fees was made after it had reviewed the reasonableness of the fees. Trial Court Opinion, 12/22/20, at 5-6. The trial court found that, based upon "provisions of the Consulting Agreement and the findings of the [c]ourt, attorneys' fees were neither appropriate nor reasonable to award here." *Id.* at 6. Our review of the record confirms that, although Vinculum was successful in its breach of

- 11 -

contract claim, Judgment ultimately was entered *against* Vinculum for $10,380.00, the amount of the net verdict in favor of Goli. Because Vinculum failed to provide any analysis of the reasonableness of the fees at issue, and because the record supports the trial court's decision not to award attorneys' fees, we cannot grant Vinculum relief on its Claim.

In its third issue, Vinculum argues that the trial court improperly applied case law applicable to employee restrictive covenants, where the record establishes that Goli was not an employee, but a competing company. Brief for Appellant at 17.[6] Vinculum asserts that the trial court erred because Goli was not an employee of Vinculum; Goli did not receive wages from Vinculum; and the trial court improperly equated Mr. Goli with Goli. *Id.* at 18.

Vinculum is not entitled to relief. Indeed, as the trial court noted in its Opinion, Vinculum, by its own admission, refers to Goli's relationship with Vinculum as an "employment relationship." Trial Court Opinion, 12/20/20, at 6 (citing Plaintiff's Motion to Strike Deposition Objections, [5/31/19], at 1 (wherein Vinculum refers to the "employment relationship" between the parties)). "Admissions … contained in pleadings, stipulations, and the like are usually termed 'judicial admissions' and as such cannot later be contradicted

---

[6] Vinculum devotes a total of two paragraphs to this issue, and its analysis is devoid of any citation to the record or relevant case law. *See* Pa.R.A.P. 2119(a). Thus, we could find Vinculum waived the issue. However, as the trial court addressed the issue, we will review the trial court's determination.

by the party who made them." ***Silco Vending Co. v. Quinn***, 461 A.2d 1324, 1326 (Pa. Super. 1983). Moreover, the trial court analyzed the factors set forth in ***Nationwide Mut. Ins. Co. v. Darden***, 503 U.S. 318, 323-24 (1992), and determined that Goli was an employee of Vinculum.[7] Trial Court Opinion, 12/20/20, at 6-8. We discern no error or abuse of discretion in this regard. ***See id.*** Consequently, Vinculum is not entitled to relief on this claim.

In its fifth issue, Vinculum asserts that the trial court improperly excluded evidence relating to profits beyond one-year post-breach, because the trial court had improperly imposed an arbitrary, one-year limitation on damages. Brief for Appellant at 18. Vinculum argues that the Consulting Agreement includes no limitation on the measure of damages arising from a breach. ***Id.*** at 20. Therefore, according to Vinculum, the trial court's one-

---

[7] In applying ***Darden***, a court looks to

> the hiring party's right to control the manner and means by which the product is accomplished. Among the other factors relevant to this inquiry are the skill required; the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the regular business of the hiring party; whether the hiring party is in business; the provision of employee benefits; and the tax treatment of the hired party.

***Darden***, 503 U.S. at 323-24.

year limitation is arbitrary and lacks any case law to support it.[8] *Id.* at 20-21. Vinculum further argues that courts in other jurisdictions have allowed for "head start" damages where a breaching party begins competing before the non-compete period was over. *Id.* at 20 (citing *Insureone Indep. Ins. Agency, LLC. v. Hallberg*, 976 N.E.2d 1014 (Ill. App. Ct. 2012).

In response, Goli argues that "[t]he aim of the law in awarding compensatory damages is to put the injured party in the position he would have been in had there been full performance of the contract throughout the period of its duration." Brief for Appellees at 58 (quoting *Maxwell v. Schaefer*, 112 A.2d 69, 73 (Pa. 1955)). Goli asserts that because the noncompetition period was for one year from the termination of the Consulting Agreement, Vinculum was entitled to be put in the position it would have been in had Goli not obtained any PennDOT positions for a period of one year. *Id.* Thus, any evidence relating to damages suffered beyond that one-year period would be irrelevant, and the trial court did not err when it excluded that evidence. *Id.* at 59.

Goli also distinguished *Hallberg*, arguing that it is not a case applying Pennsylvania law and is factually distinct. Brief for Appellant at 60.

---

[8] Vinculum again refers to events that occurred at the hearing but fails to provide corresponding citations to the record. Brief for Appellant at 19. Vinculum also fails to cite any cases applying Pennsylvania law. Indeed, of the three cases upon which Vinculum relies, two apply Arkansas law and the third applies Illinois law. *Id.* at 18-21.

Specifically, Goli points out that the **Hallberg** case involved the sale of an established business, and a promise from the defendant-seller that it would not open a competing business for a period of time. **Id.** In **Hallberg**, Goli asserts, the plaintiff was harmed during the period of non-competition, as well as after, because it was competing against a fully developed competitor instead of a fledging start-up. **Id.** at 60. In the instant case, Goli argues that Vinculum presented no evidence that it had contracted for a lessening of Goli's ability to compete, nor did it provide evidence that it would have been better off had Goli begun competing a year after the termination.[9] **Id.** at 61.

The admission of evidence is within the sound discretion of the trial court, and will not be reversed absent a showing that the trial court abused that discretion. **Schuenemann v. Dreemz, LLC.**, 34 A.3d 94, 100-01 (Pa. Super. 2011).

In its Opinion, the trial court explained its ruling, stating that the restrictive covenant in the Consulting Agreement was for a period of one year, "and therefore, Vinculum's damages were limited to a period of one year." Trial Court Opinion, 12/22/20, at 9. This Court is unable to find any Pennsylvania case law supporting Vinculum's argument that damages should be awarded beyond the time period agreed to by the parties in the Consulting

---

[9] During trial, Vinculum admitted that Goli "was set up and soliciting business through PennDOT before" it entered into the contract with Vinculum. N.T., 7/6/20, at 54.

Agreement. Thus, we discern no error or abuse of discretion by the trial court in limiting Vinculum's damages to the one-year period specified in the Consulting Agreement. ***See Schuenemann***, ***supra***. Consequently, Vinculum is due no relief on these grounds.

In its sixth issue, Vinculum argues that the trial court erred by not drawing an adverse inference from Goli's admissions, at trial, that it had copied Vinculum's consulting agreements and had used Vinculum's agreements to compete with Vinculum. Brief for Appellant at 21. An adverse inference charge is a matter "within the trial court's discretion[,] which this Court will not overturn absent manifest abuse." ***Hawkey v. Peirsel***, 869 A.2d 983, 986 (Pa. Super. 2005). Before we reach the merits of the issue, however, we note that Vinculum has failed to provide any citation to the record where it sought such an inference, or lodged an objection that one was not drawn by the trial court.[10]

Upon our review of the certified record, there is no evidence that Vinculum had lodged an objection or requested an adverse inference instruction. Because Vinculum failed to object or seek such an inference, it

---

[10] Vinculum's failure to provide citation to the record could result in waiver of this claim. ***See*** Pa.R.A.P. 2119(c) (providing that "[i]f reference is made to … any other matter appearing in the record, the argument must set forth, in immediate connection therewith, or in footnote thereto, a reference to the place in the record where the matter referred to appears …"); ***J.J. DeLuca Co. Inc. v. Toll Naval Assoc.***, 56 A.3d 402, 411 (Pa. Super. 2012) (finding waiver where the appellant failed to provide citation to the record which would support his claim); However, we decline to find waiver on this basis.

cannot complain of the alleged error on appeal. *See Hinton v. Waste Techniques Corp.*, 364 A.2d 724, 729 (Pa. Super. 1976) (concluding that appellant was due no relief because it failed to seek specific instructions and failed to bring other alleged errors to the trial court's attention at the proper time); *see also State Farm Mut. Auto. Ins. Co. v. Dill*, 108 A.3d 882, 885 (Pa. Super. 2015) (stating that "one must object to errors, improprieties, or irregularities at the earliest possible stage of the adjudicatory process to afford the jurist hearing the case the first occasion to remedy the wrong and possibly avoid an unnecessary appeal to complain of the matter" and the failure to do so results in waiver); *Summers v. Summers*, 35 A.3d 786, 790 (Pa. Super 2012) (finding waiver where party failed to object to admission of hearsay statement). Thus, we find Vinculum is due no relief on this claim of error.

In its final issue on appeal, Vinculum argues that the trial court erred as a matter of law by denying its Motion to Strike Deposition Objections. Brief for Appellant at 22. Vinculum argues that Goli went to great lengths to hide relevant evidence concerning its violations of the Consulting Agreement, and "that the deposition transcript of Mr. Goli contains close to one hundred objections (and corresponding instructions not to answer questions) in response to straigh[t]forward questions…." Brief for Appellant at 23.

Vinculum does not identify the objections it now challenges, nor does it engage in any discussion of any individual objections, beyond the boilerplate statement that the questions asked were straightforward. *Id.* at 22-23.

- 17 -

Moreover, the transcript of Mr. Goli's deposition, which was attached to the Motion to Strike and appears to be the only version in certified record,[11] is illegible and provides no basis upon which this Court could find an abuse of discretion by the trial court. Because Vinculum's claim is not supported in the record, we find this issue waived, and cannot grant relief on this claim. *Hackett v. Indian King Residents Assoc.*, 195 A.3d 248, 255 (Pa. Super. 2018) (finding issue waived where appellant failed to provide citations to the record and support her argument with citation to relevant case law).

We next address Goli's cross-appeal.[12] Goli first argues that the trial court's award of damages to Vinculum should be reversed, because the non-competition agreement was not reasonably related to the protection of a legitimate business interest, and the court should have found it unenforceable. Brief for Appellee at 69. Specifically, Goli argues that to be enforceable, the restrictive covenant must be "designed to protect the legitimate interest of the employer." *Id.* (citing Trial Court Opinion, 12/22/20, at 11-12). Goli asserts that these interests have included "trade secrets, confidential information, good will, and unique or extraordinary skills." *Id.* (citing *Hess v. Gabbard & Co.*, 808 A.2d 912, 920 (Pa. 2002)). Goli argues that, unless

---

[11] We note that the certified record in this case contains multiple parts and thousands of pages.

[12] Vinculum did not file a reply to Goli's cross-appeal or otherwise address the issues raised in Goli's cross-appeal.

a protectable interest is established, the non-competition agreement is unenforceable. Brief for Appellee at 70-71 (citing **Bayliss**, 869 A.2d at 990). According to Goli, there is no evidence demonstrating that Vinculum had any "good will" or other business interest worthy of protections. **Id.** at 71.

In its Opinion, the trial court found that "during [Goli's] employ with Vinculum, [Goli] worked extensively and closely with … PennDOT. It is reasonable that Vinculum would want to protect its ongoing business relationship with its clients upon [Goli's] future departure from Vinculum's employ." Trial Court Opinion, 12/22/20, at 12. The trial court's finding is supported in the record.

At trial, Kailash Kalantri ("Kalantri"), the Director of Vinculum's Legal Affairs, testified that without the non-competition clause, Vinculum could not exist. N.T., 7/6/20, at 85. Kalantri explained that, without the non-compete agreement, consultants would begin working at an agency through Vinculum, develop a relationship with that agency, and then begin independently working for the agency, cutting Vinculum out of the process. **Id.** at 66. Our Supreme Court noted that covenants have developed into important business tools to allow employers "to prevent their employees and agents from learning their trade secrets, befriending their customers and then moving into competition with them." **Hess**, 808 A.2d at 918. Thus, the trial court's findings are supported in the record, and we discern no error or abuse of discretion in this regard.

In its second issue, Goli argues that the trial court erred in determining the amount of damages awarded to Vinculum. Brief for Appellee at 75. In support of its claim, Goli argues that the trial court improperly found that Vinculum would have obtained, and earned profits from, the two consultation jobs that Goli had worked in violation of the restrictive covenant. *Id.* at 76. Goli asserts that, because there were over 300 competing companies, there is no way of knowing whether Vinculum would have been awarded the positions. *Id.* Goli further posits that under Pennsylvania law, Vinculum was required to prove that, although Goli was awarded two jobs (one which Mr. Goli kept for himself and a second which was obtained by S.A., an associate/employee of Goli), Vinculum "came in second" and would have been awarded the contracts if Goli had not. Brief for Appellee at 77 (citing *Scobell Inc. v. Schade*, 688 A.2d 715, 719 (Pa. Super. 1997)). Goli does not challenge the trial court's calculation of profits that Goli earned from the two PennDOT jobs in 2016.

> Our standard when we review claims involving damage awards is well settled.

> The determination of damages is a factual question to be determined by the fact-finder. The fact-finder must assess the testimony, by weighing the evidence and determining its credibility, and by accepting or rejecting the estimates of the damages given by the witnesses.

> Although the fact-finder may not render a verdict based on sheer conjecture or guesswork, it may use a measure of speculation in estimating damages. The fact-finder may make a just and reasonable estimate of the damage based on relevant

data, and in such circumstances may act on probable, inferential, as well as direct and positive proof.

***Omicron Sys., Inc. v. Weiner***, 860 A.2d 554, 564-65 (Pa. Super. 2004).

As our Supreme Court has explained, damages in a case involving the breach of a non-compete agreement "are difficult to calculate with absolute precision[.]" ***Aiken Indus., Inc. v. Estate of Wilson***, 383 A.2d 808, 812 (Pa. 1978) (plurality). Although damages may not be based on a mere guess or speculation, where the amount may be estimated from the evidence, "a recovery will be sustained even though such amount cannot be determined with entire accuracy." ***Id.***

In its Opinion, the trial court addressed this claim as follows:

Contrary to what [counsel for Goli] seems to think, I think this contract is enforceable. I think as a result of the breach of the contract that [Vinculum] is entitled to get the amount they have received had Mr. Goli and [] S.A. [has] been for one year period through [Vinculum], and based on my calculations that amount … on [Vinculum's] claim against [Goli], that amount comes to $32,145. I calculated that by using the number of hours that was established that Mr. Goli worked for PennDOT in the year after his contract was terminated and multiplied by $15 per hour. And I calculated that by also looking at the amount that the person identified as S.A. earned during that period … Mr. Goli indicated that was 38- to $3900. I assumed the larger of those two numbers.

Trial Court Opinion, 12/22/20, at 13 (citing N.T., 7/6/20, at 219-20).

Thus, the trial court properly reviewed the profits earned by Goli during the breach, and made a reasonable estimate of damages based on the evidence. ***See*** Trial Court Opinion, 12/22/20, at 13. Further, the verdict bears "a reasonable resemblance to the damages proven[.]" ***See***

- 21 -

***Witherspoon v. McDowell-Wright***, 241 A.3d 1182, 1187 (Pa. Super. 2020) (concluding that, "[i]f the verdict bears a reasonable resemblance to damages proven, we will not upset it merely because we might have awarded different damages."). Accordingly, Goli is due no relief on its second claim.

In its final issue on appeal, Goli argues that the trial court erred in denying prejudgment interest on Goli's successful counterclaim for unpaid hourly fees. Brief for Appellee at 79. Goli asserts that the interest award in this case was not subject to the trial court's discretion, but was required. ***Id.*** at 79-80. Goli argues that it should have been awarded interest because "the sum due is sufficiently definite … if it is ascertainable from the terms of the contract, **as where the contract fixes a price per unit of performance, even though the number of units performed must be proved** and is subject to dispute." ***Id.*** at 80 (quoting ***Cresci Const. Servs., Inc. v. Martin***, 64 A.3d 254, 260 (Pa. Super. 2013) (emphasis in original)). Goli argues that the price per unit was identified in Exhibit A to the Consulting Agreement as $135/hour. ***Id.*** at 81. Goli also asserts that it proved the number units or hours that were set forth on the written invoices and time sheets. ***Id.***

Our review of a trial court's decision whether to award prejudgment interest is for an abuse of discretion. ***Cresci Const. Servs***, 64 A.3d at 258. "[P]rejudgment interest is a matter of right where the amount is ascertainable from the contract. Where the amount due and owing is not sufficiently definite, prejudgment interest is awardable at the discretion of the trial court."

***Ely v. Susquehanna Aquacultures, Inc.***, 130 A.3d 6, 15 (Pa. Super. 2015) (citations omitted).

In its Opinion, the trial court addressed this claim as follows:

This [c]ourt did not err in denying Goli Technologies' post-trial request for pre-judgment interest on the net verdict. "Comment c to Restatement (Second) of Contracts § 354 underscores that prejudgment interest is awarded as a matter of right **only** on breach-of-contract damages ascertainable from the **terms of the contract**…. In all other circumstances, prejudgment interest is awarded at the court's discretion." [***Cresci Const. Servs.***, 64 A.3d at 260]. Given that a calculation of damages was not readily ascertainable from the terms of the contract, this [c]ourt found that an award of prejudgment interest was not appropriate.

Trial Court Opinion, 12/22/20, at 13-14 (emphasis added).

After review of the record, we agree. Pursuant to ***Cresci Const. Servs.***, "as prerequisites to running of prejudgment interest, the debt must have been liquidated with some degree of certainty and **the duty to pay it must have become fixed**." ***Cresci Const. Servs.***, 64 A.3d at 262 (emphasis added). In this case, Exhibit A to the Consulting Agreement fixed the price per unit, or hour in this case, at $135/hour, and Goli presented testimony and documentation regarding the numbers of hours worked by its two consultants. However, the Consulting Agreement expressly states, "[Goli] further agrees and authorizes Vinculum to withhold payment up to the damages incurred in case of any violation by [Goli] or [Mr. Goli]." Consulting Agreement, 12/16/14, at ¶ 10. Consequently, Vinculum was authorized to withhold payment up to the amount of damages incurred—an amount not readily ascertainable until the trial court calculated the exact damages suffered by

Vinculum as a result of Goli's breach of the Consulting Agreement. As such, Vinculum's duty to pay was not fixed until that time.

Given that the amount due to Goli was not ascertainable from the terms of the Consulting Agreement, the trial court properly exercised its discretion in deciding not to award prejudgment interest. Accordingly, Goli is due no relief on those grounds.

Judgment affirmed.

Judge Stabile joins the memorandum.

Judge Bowes files a dissenting memorandum.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/29/2021