J-S09029-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| ANDREW BECKER AND KELLY BECKER | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| NEERLAND BUILDING AND REMODELING, INC., RICHARD NEERLAND, AND DEBRA NEERLAND | : | No. 2103 EDA 2025 |
| | : | |
| Appellants | : | |

Appeal from the Judgment Entered July 16, 2025
In the Court of Common Pleas of Delaware County Civil Division at
No(s): CV-2021-009269

BEFORE: MURRAY, J., LANE, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY LANE, J.: **FILED MAY 5, 2026**

Neerland Building and Remodeling, Inc. ("NBR"), Richard Neerland ("Richard"), and Debra Neerland ("Debra") (collectively, "Appellants") appeal from the judgment imposed in favor of Andrew Becker ("Andrew") and Kelly Becker ("Kelly") (collectively, the "Beckers"), following a non-jury trial. We affirm.

The trial court summarized the underlying factual and procedural history, which the parties generally do not dispute. NBR is a Pennsylvania corporation engaged in the business of new home construction. Richard is

_____

[*] Former Justice specially assigned to the Superior Court.

NBR's sole shareholder, and Debra is an employee who performs, *inter alia*, bookkeeping. **See** N.T., 11/12/24, at 217-18, 265.

The Beckers, as buyers, negotiated a sale agreement (the "Agreement") for Appellants to construct a new home. In January 2020, the Beckers paid Appellants a deposit of $1,000, and subsequently "selected upgrades and changes to the house." Re-Numbered Findings of Fact, Conclusions of Law and Verdict ("Trial Court Opinion"), 7/8/25, at 4-5. On February 14, 2020, the Beckers and NBR executed the Agreement, which included a purchase price of $429,000.

Relevant to this appeal, the Agreement governed deposits, escrow accounts, and termination as follows:[1]

**2. Purchase Price and Deposits . . .**

* * * *

(D) Deposits . . . will be paid [to NBR,] who **will retain deposits in an escrow account** in conformity with all applicable laws and regulations until consummation or termination of this Agreement. . . .

* * * *

**23. Default, Termination and Return of Deposits . . .**

(A) Where [the Beckers] terminate[] this Agreement pursuant to any right granted by this Agreement, [the Beckers] will be entitled to a return of all deposit monies paid on account of Purchase Price, other than those amounts

_____

[1] The Agreement defined the "Buyers" as Andrew and Kelly Becker and the "Seller" as NBR. Standard Agreement for the Sale of New Construction ("Agreement"), 2/14/20, at 1, Exhibit A to Amended Complaint, 3/11/22.

designated as non-refundable, pursuant to the terms of Paragraph 23(B), and this Agreement will be VOID. Termination of this Agreement may occur for other reasons giving rise to claims by [the Beckers] and/or [NBR] for the deposit monies.

(B)   Where [NBR] terminates this Agreement due to [the Beckers'] default , breach or failure to comply with the obligations contained in this Agreement, or where this Agreement is terminated through no fault of [NBR], then [NBR] has the option of retaining all sums paid by [the Beckers], including deposit monies designated as non-refundable.

(C)   ***Where [the Beckers] terminate[] this Agreement due to [NBR's] default, breach or failure to comply with the obligations*** contained in this Agreement, then ***[the Beckers] will be entitled to a return of all deposit monies paid on account of Purchase Price, including those amounts designated as non-refundable***, pursuant to the terms of paragraph 23(B), and this Agreement will be VOID.

Agreement, 2/14/20, at 2, 9-10 (some emphases added, some emphasis in original, and unnecessary capitalization omitted).

The Agreement set forth a settlement date of August 10, 2020 — approximately six months later — and included a "time is of the essence clause" as follows:

**4.   Settlement and Possession . . .**

(A)   Settlement Date is August 10, 2020, or before if [the Beckers] and [NBR] agree.

* * * *

**5.   Dates/Time is of the Essence . . .**

* * * *

(B)   The Settlement Date and all other dates and times identified for the performance of any [obligations of this[2]] Agreement are of the essence and binding.

\* \* \* \*

(D)   **The Settlement Date** is not extended by any other provision of this Agreement and **may only be extended by mutual written agreement of the parties**.

(E)   Certain terms and time periods are pre-printed in this Agreement as a convenience to the [Beckers] and [NBR ].  All pre-printed terms and time periods are negotiable and may be changed by striking out the pre-printed text and inserting different terms acceptable to all parties, except where restricted by law.

*Id*. at 2-3 (emphasis added and unnecessary capitalization omitted).

Finally, section 29(C) of the Agreement provided that "if construction of home [*sic*] is not completed for settlement to take place by August 31, 2020, [NBR] will pay [the Beckers'] September rent ($2,000[.])" *Id*. at 11.

Shortly after the execution of the Agreement, the Beckers paid Appellants two additional deposits "for upgrades," in the amounts of $21,450 and $68,135.  Trial Court Opinion, 7/8/25, at 6.  On February 19, 2020, five days after execution, the parties entered into a written "Addendum/Endorsement to the Agreement of Sale" ("Addendum").  The Addendum addressed the deposits already paid and stated in sum:

---

[2] With respect to the copy of the Agreement attached to the Beckers' amended complaint, this portion of the clause is not legible.  Nevertheless, on appeal the Beckers set forth the text as we state it above, and Appellants do not dispute this representation.  **See** Beckers' Brief at 5.

- 4 -

> [The Beckers] and [NBR] agree that the Escrow Deposit of $21,450[] and the Second Deposit for upgrades of $68,135[] will be refunded to [the Beckers] within 7 days of determining home cannot be built.
>
> [The Beckers] and [NBR] agree that the Second Deposit for upgrades $68,135[] will be held in an Escrow Account with approval for use by [NBR] for the purchase of materials and/or the payment of professional wages. The remainder of the deposit will be fully remitted to [NBR] at time of settlement.

Addendum/Endorsement to Agreement of Sale ("Addendum"), 2/19/20, Exhibit B to Amended Complaint, 3/11/22.

Subsequently, the COVID-19 pandemic began, and restrictions set by the Commonwealth of Pennsylvania "halted" construction. Trial Court Opinion, 7/8/25, at 8. The trial court summarized the relevant trial testimony regarding the lack of construction and the Beckers' ultimate termination of the Agreement:

> The testimony was undisputed that from March of 2020 through June of 2020, the construction on the Property was halted and that discussions between the parties regarding construction of the Property ramped up again in July of 2020.
>
> Abundant credible testimony and exhibits of emails and text messages evidence[d] that, from March 2020 through September 2020, [Appellants] informed [the Beckers] repeatedly that the concrete foundation would be "poured soon."
>
> The testimony and evidence clearly established that as of September 11, 2020, the concrete foundation of the house **had yet to be poured**.
>
> Additionally, there was clear and credible testimony that the foundation hole . . . dug . . . when [the Beckers] first looked at the Property in January of 2020 looked similar to the photograph taken July 15, 2020, with . . . piles of dirt surrounding the hole,

- 5 -

except the lot was more overgrown and soil had eroded into the hole[.]

\* \* \* \*

On September 5, 2020, [the Beckers' realtor, Mary Elizabeth McNally ("McNally"),] relayed to [the Beckers] a summary of the September 4, 2020 meeting she had with . . . Debra[,] including providing [the Beckers] a realistic timeline considering the COVID-19 restrictions and supply delays . . . and expressing that she believed [the Beckers] would be happy with the final product. [*sic*]

As of September 11, 2020, the building of the house had not begun[ and] there was no foundation poured for the house[;] therefore, the house had not been completed by either the Settlement Date of August 10, 2020 or by August 31, 2020[, the triggering date for Appellants' payment of the Beckers' September rent.]

\* \* \* \*

On September 11, 2020, Debra [emailed the Beckers] with additional information and answers discussed at the September 4, 2020 meeting. This . . . email provided [the Beckers] with a realistic timeline for the completion of their home, including whether the structural modifications desired by [the Beckers] were feasible.

In response to that email, [the Beckers] sent [Appellants] the following email:

> This email is meant to serve as our notice that Kelly and I are terminating our agreement of sale for [the property], due to [Appellants'] default of the stated settlement date in the contract.

\* \* \* \*

> The Settlement Date per our Agreement was August 10, 2020, we have received a revised completion date of February 2021. The Settlement Date of August 10, 2020 was binding and time was and remains of the essence.

- 6 -

> We simply cannot wait another 6 months or more to find a new home.

Trial Court Opinion, 7/8/25, at 8-11 (paragraph numbers and record citations omitted and paragraph break added).

In the above email, Andrew requested a return of their deposits totaling $89,585. The Beckers' realtor, McNally, also emailed Appellants, relaying their request "that all escrow funds be returned in full." *Id*. at 11. Debra responded *via* email, *inter alia*, "both the [A]greement . . . and the . . . [A]ddendum state your upgrades are non-refundable," but in any event advised: "If you are not moving forward we will submit to have your ***escrow deposit*** released." Email from Debra to McNally, 9/14/20, Trial Exhibit P19 (emphasis added); ***see also*** Trial Court Opinion, 7/8/25, at 18-19. However, Appellants "never released any monies paid by" the Beckers. Trial Court Opinion, 7/8/25, at 11.

In November 2021, the Beckers commenced the underlying suit against Appellants, raising claims of breach of contract and a violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law[3] ("UTPCPL"). Appellants filed counterclaims of: (1) breach of contract, claiming that the Beckers breached the Agreement and Addendum; and (2) quantum meruit, for the "value of the labor NBR expended in performing its duties under the" Agreement. ***Id***. at 2.

_____

[3] ***See*** 73 P.S. §§ 201-1 to 201-10.

This matter proceeded to a non-jury trial on November 12, 2024. Andrew, as well as the Beckers' realtor, McNally, testified. The Beckers also called Richard and Debra to testify as if on cross-examination. The trial court summarized:

> Debra . . . and Richard . . . conceded unequivocally [that they] did not place any of [the Beckers'] deposits into an escrow account and [Appellants] at no time maintained an escrow account.
>
> * * * *
>
> Debra . . . conceded unequivocally that the [Beckers'] monies . . . were placed in NBR's operating account, and that monies [flowed] out of that account and cannot be attributed to having been spent on building materials or professional wages related to the building of [the Beckers'] house on the Property.

Trial Court Opinion, 7/8/25, at 7-8 (paragraph numbers and record citations omitted).

> Andrew . . . testified credibly that [he and Kelly] would not have entered into the . . . Agreement and Addendum[] if he had known that the deposits would not be placed into the required Escrow Account but rather . . . deposited into [NBR's] operating account.

*Id*. at 7 (paragraph number and record citation omitted).

Richard and Debra then testified on their own behalf.[4] Following the presentation of evidence, the parties filed, at the trial court's direction, proposed findings of fact and conclusions of law.

_____

[4] Following the Beckers' case-in-chief, Appellants made an oral motion for nonsuit. The trial court granted it in part, resulting in the following: (1) the Beckers' claim of breach of contract continued against NBR solely, and no longer against Debra and Richard individually; and (2) the UTPCPL claim
*(Footnote Continued Next Page)*

On March 17, 2025, the trial court announced a verdict in favor of the Beckers on both their claims, as well as Appellants' two counterclaims. The court concluded that Appellants materially breached the Agreement by failing to: (1) place the deposits in an escrow account; (2) "substantially complete the house" by the settlement date "or enter into a written agreement to extend the settlement date;" and (3) pay the Beckers' September 2020 rent. Trial Court Opinion, 7/8/25, at 12-13. The court also found Richard and NBR violated the UTPCPL, on the grounds that they misrepresented that they would place the deposits into escrow. The court, however, declined to award treble damages as allowed by the UTPCPL, but awarded the Beckers costs and attorneys' fees.[5]

Both parties filed post-trial motions, which the trial court denied. On July 16, 2025, the court entered the underlying judgment, of $129,573.95 in favor of the Beckers.

---

continued against NBR and Richard only, and no longer against Debra. ***See*** N.T., 11/12/24, at 270; ***see also*** N.T., 11/13/24, at 6.

[5] With respect to Appellants' counterclaim for breach of contract, the court rejected their contention that Andrew's email did not suffice to terminate the Agreement; and thus concluded Andrew's email to terminate was sufficient. Finally, the trial court denied relief on Appellants' quantum meruit claim. The court found incredible Richard's testimony that Appellants had "spent three to four hundred hours getting [the Beckers'] house the way they wanted it," and observed that Appellants had not presented any other evidence to support this testimony. Trial Court Opinion, 7/8/25, at 20.

Appellants filed a timely notice of appeal. We note the trial court did not order a Pa.R.A.P. 1925(b) statement of errors complained of on appeal.

Appellants present five issues for our review:

I. Whether the trial court's finding that [Appellants'] failure to place deposits made to it in an escrow account was a material breach of the sales agreement was predicated on an error of law, and therefore should be reversed?

II. Whether the trial court's finding that [Appellants] materially breached the sales agreement when [Appellants] failed to substantially complete the house or enter into a written agreement to extend the settlement date was predicated on an error of law?

III. Whether [Appellants have] the right under the sales agreement to retain all deposits made by [the Beckers]?

IV. Whether the finding of the trial court that [Appellants] violated the [UTPCPL] is based on an error of law?

V. The finding of the trial court that appellant [Richard] is individually liable under the [UTPCPL] is based on an error of law?

Appellants' Brief at 5-6 (unnecessary capitalization omitted).

Preliminarily, we observe that Appellants raise multiple sub-issues under these questions, resulting in a large number of claims. We remind Appellants' counsel "that when an appellant raises an extraordinary number of issues on appeal . . . a presumption [may arise] that there is no merit to them." *Krishnan v. Cutler Grp., Inc.*, 171 A.3d 856, 868 n.4 (Pa. Super. 2017) (citation omitted).

Additionally, we consider the Beckers' argument that Appellants have waived their issues for appellate review, for failure to preserve them in pre-

- 10 -

trial proceedings, at trial, or in their post-trial motion. Appellants do not respond to nor dispute this allegation. We note with displeasure that Appellants' counsel has failed to cite the place in the record where they would have preserved their issues, in contravention of our Rules of Appellate Procedure. *See* Pa.R.A.P. 2117(c)(1)-(4) (requiring the statement of the case to state the place in the proceedings where the appellant raised and preserved issues), 2119(3) (requiring the argument to state the same); *see also Young v. S. B. Conrad, Inc.*, 216 A.3d 267, 274 (Pa. Super. 2019) (stating that "[o]ur appellate courts have long held that an appella[nt] who does not follow Pa.R.A.P. 2117(c) and Pa.R.A.P. 2119(e) waives the related issues due to the defects in his brief"). The notes of testimony for the two days of trial span a total of 345 pages. "It is not this Court's responsibility to scour the record for substantiation that issue has been properly raised." *Hackett v. Indian King Residents Ass'n*, 195 A.3d 248, 255 (Pa. Super. 2018) (citation omitted).

Nevertheless, while we conclude that Appellants have waived some issues for our review, as discussed *infra*, we observe the trial court has aptly addressed the issues that they have preserved. Accordingly, we decline to find waiver based on counsel's failure to comply with Rules 2117(c) and 2119(e).

In their first issue, Appellants aver the trial court erred in finding that their failure, to place the Beckers' deposits into escrow, was a material breach of the Agreement. In support, they advance several theories, which we

summarize *seriatim*. First, Appellants maintain that the trial court misinterpreted section 2(D) of the Agreement, which stated:

> Deposits . . . will be paid in U.S. Dollars to [NBR,] who will retain deposits in an escrow account in conformity with all applicable laws and regulations **until consummation or termination of this Agreement**.

Appellants' Brief at 21 (*quoting* Agreement, 2/14/20, at 2) (emphasis in brief). Appellants interpret the above term, "consummation," to mean execution, or the parties' signing, of the Agreement. *Id*. They thus reason: (1) the escrow requirement applied only to deposits made **before** the Agreement was consummated or signed; (2) here, the Beckers delivered deposits "**after** the Agreement was fully executed;" and thus (3) "section 2(D) imposed no obligation on Appellants to place those funds in escrow." *Id*. at 22-24 (emphasis added and other emphasis and unnecessary capitalization omitted).

Appellants' second theory, under their first issue, is that the trial court erred in misinterpreting this clause of the Addendum:

> [T]he Second Deposit for upgrades of $68,135.00 will be held in an Escrow Account with approval of use by Seller/Builder **for the purpose of materials and/or the payment of professional wages**.

Appellants' Brief at 30 (emphasis added)*.* Appellants contend: (1) this clause did not restrict their "use of the escrowed funds to materials or professional wages specific to the construction of [the Beckers'] property;" and instead (2) the clause, "without qualification," authorized their use of the Beckers' funds

for **any** materials or payment of wages, including those unrelated to the Beckers' property. **Id**. at 31.

We determine Appellants have waived both these particular theories for appellate review, as they did not include them in their post-trial motion. Pennsylvania Rule of Civil Procedure 227.1 governs post-trial motions. This Court has explained:

> Rule 227.1 requires a post-trial motion to be filed within 10 days of the decision in a nonjury trial in order to provide the trial court with an opportunity to correct its own error; otherwise, objections not raised in a post-trial motion are waived. Pa.R.Civ.P. 227.1[.]
>
>> [T]he filing of post-trial motions ensures that the trial [court] has a chance to correct alleged trial errors. This . . . advances the orderly and efficient use of our judicial resources. First, appellate courts will not be required to expend time and energy reviewing points on which no trial ruling has been made. Second, the trial court may promptly correct the asserted error. . . . Third, appellate courts will be free to more expeditiously dispose of the issues properly preserved for appeal.
>
> Non-compliance with the Pennsylvania Rules of Civil Procedure cannot be excused when parties have made no attempt at conformity. . . .

**Rounick v. Neducsin**, 231 A.3d 994, 998 (Pa. Super. 2020) (citations omitted).

Appellants cannot raise, for the first time on appeal, discrete theories for relief that they did not include in their post-trial motion. Accordingly, they have waived these two claims. **See id**.

The final sub-claim, under Appellants' first issue, is that the trial court erred in holding the Addendum was enforceable where the Beckers provided

no consideration.[6]  Appellants contend that "[a]n addendum to a new home construction contract . . . requires additional consideration on both sides to be valid and enforceable."  Appellants' Brief at 25 (*citing* **Nicolella v. Palmer**, 248 A.2d 20 (Pa. 1968)).  Appellants claim, however, that the Beckers "provided nothing in return: no additional payment, concession, or obligation," and merely paid "the $68,135 upgrade deposit," which was "already legally obligated" under the Agreement.  Appellants' Brief at 26-27.  Appellants further maintain that it was the Beckers who drafted the Addendum, they presented the Addendum on the day the deposit was due, and the Addendum "imposed new obligations" on Appellants — that "both deposits be refunded if the home 'cannot be built,'" and "that the $68,135 upgrade deposit be placed into" escrow.  *Id*. at 25-27.

We first consider the applicable standard of review:

> Our appellate role in cases arising from non-jury trial verdicts is to determine whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in any application of the law.  The findings of fact of the trial [court] must be given the same weight and effect on appeal as

_____

[6] Appellants included this claim in their proposed findings of facts and conclusions of law, as well as their post-trial motion.  Thus, they have preserved it for our review.  **See Rounick**, 231 A.3d at 998; **see also** Pa.R.C.P. 227.1(b)(1) (providing that "post-trial relief may not be granted unless the grounds . . . were raised in[, *inter alia*, a] request for findings of fact or conclusions of law"); Post Trial Motion for Relief, 3/31/25, at unnumbered 7 (claiming that NBR "did not receive any additional money or promises from the Beckers in exchange for [NBR's] agreement to the terms in the Addendum")  **See** Proposed Findings of Facts and Conclusions of Law, 1/25/25, at ¶ 16.

- 14 -

the verdict of a jury.  We consider the evidence in a light most favorable to the verdict winner.  . . .

[W]here the issue concerns a question of law, our scope of review is plenary.  The trial court's conclusions of law on appeal originating from a non-jury trial are not binding on an appellate court because it is the appellate court's duty to determine if the trial court correctly applied the law to the facts of the case.

*El-Gharbaoui v. Ajayi*, 260 A.3d 944, 958 (Pa. Super. 2021) (citations omitted and paragraph break added).

"The interpretation of a contract poses a question of law subject to plenary review."  *Trombetta v. Raymond James Fin. Servs.*, 907 A.2d 550, 558 (Pa. Super. 2006).

It is well-established that "[a] contract is formed when the parties to it 1) reach a mutual understanding, 2) exchange consideration, and 3) delineate the terms of their bargain with sufficient clarity. Consideration consists of a benefit to the promisor or a detriment to the promisee."  . . .

Moreover, "to successfully maintain a cause of action for breach of contract requires that the plaintiff establish: (1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract and (3) resultant damages."

*Rice Drilling B, LLC v. Scott*, 325 A.3d 663, 671 (Pa. Super. 2024) (citations omitted).

"The burden of proving modification of a contract is carried by the party asserting the modification.  A contract can be modified with the assent of both contracting parties if the modification is supported by consideration."  *Trombetta*, 907 A.2d at 558; *see also Wilcox v. Regester*, 207 A.2d 817,

821 (Pa. 1965) (stating that "[a]n agreement may be modified with the assent of both contracting parties if the modification is supported by consideration").

The trial court did not address Appellants' discrete claim — that the Addendum was not enforceable due to a lack of consideration. However, in its findings of fact, the court stated:

> [The] Addendum was a codification of the upgrades requested by [the Beckers] and agreed to by [Appellants] and as paid for by [Beckers]. **This Addendum also confirms what was written in the . . . Agreement: Any deposits would be held by [Appellants] in an escrow account and any of the monies escrowed would be released to [the Beckers] should the house not be built**; conversely, should the house be completed, the monies in the escrow account would remit to [Appellants] at Settlement.

Trial Court Opinion, 7/8/25, at 7 (emphasis added and unnecessary capitalization omitted). In its conclusions of law, the trial court similarly determined: "The Addendum, signed by both parties five days after the . . . Agreement was signed, recites the upgrades and payment of the upgrades *that were agreed to by the parties, in connection with the . . . Agreement*." *Id*. at 12 (emphasis added).

After careful review, we determine the record supports the trial court's finding of fact — that the Addendum's requirement of an escrow account merely "confirm[ed] what was [already] written in the" Agreement. *Id*. at 7. According to Appellants, the Agreement itself obligated the Beckers to pay the $68,135 deposit. In other words, the $68,135 deposit was an Agreement term. Meanwhile, Appellants do not dispute that the Agreement required them

- 16 -

to place any deposits, paid by the Beckers, in an escrow account. *See* Agreement, 2/14/20, at 2. They also do not dispute the trial court's finding that their failure, to place the deposits in escrow, was a material breach of the Agreement.[7] Accordingly, regardless of whether the escrow requirement in the Addendum was enforceable, we determine there is no merit to Appellants' umbrella claim — that the court erred in finding they committed a contract breach by failing to place the deposits in escrow. *See Chris Eldredge Containers, LLC v. Crum*, 335 A.3d 1216, 1220 (stating that "[w]e are not limited by the trial court's rationale, and we may affirm its decision on any basis"). For all the foregoing reasons, we determine no relief is due on Appellants' first issue.

In their second issue, Appellants aver that the trial court erred in finding that they materially breached the Agreement. Again, Appellants present sub-claims, which we set forth *seriatim*. First, Appellants contend that the trial court erred in finding their failure to pay the Beckers' September 2020 rent was a material breach. In support, Appellants assert there was no trial evidence that the Beckers "ever requested such payment . . . , nor that such payment was expected, discussed, or required under the" Agreement.

_____

[7] Appellants discuss their failure to comply with the escrow provisions under a different issue — the **UTPCPL** claim. *See* Appellants' Brief at 43-44. However, in their extensive argument concerning the **breach of contract** claim, Appellants do not challenge the trial court's finding that their failure to place the deposits into escrow was a material breach.

- 17 -

Appellants' Brief at 36. Appellants did not include this claim in their post-trial motion, and thus have waived it for appellate review. *See Rounick*, 231 A.3d at 998.

Next, Appellants contend that under Pennsylvania law, the parties may extend "the time fixed in an agreement for settlement" by oral agreement or waiver by conduct.[8] Appellants' Brief at 33. Appellants claim that here, the following conduct by the Beckers constituted such waiver: (1) in a June 27, 2020 email, Andrew "explicitly acknowledged . . . without a protest" "the fact that the house would not be complete by August 10," 2020; and (2) at trial, Andrew testified that the settlement "date specifically didn't matter," and they believed "that the house would be completed by the end of 2020." *Id*. at 34-35. Appellants reason that because the Beckers waived the deadline for a settlement, they could not have committed a breach by failing to meet that deadline.

This Court has explained:

A written agreement may be orally modified, even when the contract expressly provides that all modifications must be in writing, if the parties' conduct clearly shows the intent to waive the no-oral-modifications clause. As to "time is of the essence" provisions in contracts, our Supreme Court has long stated that they, too, may be waived by the parties' conduct:

[E]ven though the time fixed in an agreement for settlement is stated to be of the essence of the

_____

[8] Appellants included this claim in their post-trial motion, and have thus preserved it for our review. *See Rounick*, 231 A.3d at 998; Post Trial Motion for Relief, 3/31/25, at unnumbered 2.

- 18 -

agreement, ***it may be extended by oral agreement or be waived by the conduct of the parties***, and where the parties treat the agreement as in force after the expiration of the time specified for settlement it becomes indefinite as to time and neither can terminate it without reasonable notice to the other.

*CM Goat, LLC v. Valdez*, 318 A.3d 392, 397 (Pa. Super. 2024) (emphasis in *CM Goat, LLC*) (*citing*, *inter alia*, *Warner Co. v. MacMullen*, 112 A.2d 74, 78 (Pa. 1955)); *see also ADP, Inc. v. Morrow Motors, Inc.*, 969 A.2d 1244, 1249 (Pa. Super. 2009) (stating that "an agreement that prohibits non-written modification may be modified by [a] subsequent oral agreement if the parties' conduct clearly shows the intent to waive the requirement that the amendments be made in writing").

Here, the trial court rejected Appellants' claim that the Beckers' conduct constituted a waiver of the settlement deadline. In support, the court relied on the provision in the Agreement "that the settlement date can only be extended by mutual written agreement of the parties." Trial Court Opinion, 7/8/25, at 12 (*citing* Agreement, 2/14/20, at 3). The court further reasoned that it "heard no testimony as to any written agreement to extend the settlement date." *Id*.

We need not reach the merits of Appellants' claim. Rather, we conclude that regardless of whether Appellants' failures, to construct the home and reach settlement by August 10, 2020, were a material breach, the trial court found a material breach on an additional ground: Appellants' failure to place the deposits into escrow. The trial court's findings of fact and conclusions of

law extensively addressed this issue. *See* Trial Court Opinion, 7/8/25, at 6-7, 9-10, 13-14 (quoting escrow provisions of the Agreement; considering Debra and Richard's "unequivocal[]" concession that they did not place any of the deposits into escrow and at no time maintained an escrow account; finding that upon the Beckers' termination of the Agreement, based on Appellants' breach, the Beckers were "entitled to all deposits, even those designated as 'non-refundable;'" and noting Debra's post-termination representation that Appellants "would release the escrowed deposit"). However, as noted above, on appeal Appellants do not challenge this finding. Thus, we may uphold the trial court's finding, that Appellants materially breached the Agreement, on another basis. *See Chris Eldredge Containers, LLC*, 335 A.3d at 1220 (stating that we may affirm the trial court's decision on any basis). For the foregoing reasons, we determine no relief is due on Appellants' second issue.

In their third issue, Appellants assert that the Beckers breached the Agreement, and thus they were entitled to retain all deposits. In support, Appellants: (1) reiterate that the Beckers' conduct waived the time-of-essence clause in the Agreement; (2) thus the Beckers' purported termination of the Agreement, on the basis of the alleged failure to meet the August 10, 2020 settlement date, was a breach of the Agreement; and thus (3) Appellants could retain all deposits under subsections 23(B) and 23(H) of the Agreement.

Again, we need not reach the merits of this claim — whether the failure to reach settlement on August 10, 2020 was a material breach. We reiterate

that the trial court found: (1) Appellants materially breached the Agreement on an additional ground — failing to place the deposits into escrow, as required by the Agreement; (2) the Beckers' termination of the Agreement on this basis was proper; and thus (3) pursuant to the Agreement terms, the Beckers were entitled to a return of all deposits paid. Trial Court Opinion, 7/8/25, at 14, 16. As noted above, Appellants do not challenge these findings on appeal. Accordingly, we uphold the trial court's finding, that the Beckers had a proper basis for terminating the Agreement, albeit on different grounds. **See Chris Eldredge Containers, LLC**, 335 A.3d at 1220.

In their last two issues, Appellants address the trial court's UTPCPL findings. In their fourth issue, Appellants assert that the court erred in finding that Richard and NBR violated the UTPCPL. Appellants aver that the trial court found a UTPCPL violation based solely on the alleged nonperformance of a contract term — the escrow requirement — and "not on any evidence of deception, misrepresentation, or inducement." Appellants' Brief at 43. Appellants maintain that the Beckers presented no evidence that they "ever inquired into the status of the escrow" or "relied on any statement by Appellants concerning deposit handling," nor that Appellants "made any misrepresentation about escrow handling." **Id**. at 43-44.

We conclude Appellants have waived this issue for our review for failure to include it in their post-trial motion. **See Rounick**, 231 A.3d at 998. The sole UTPCPL issue in Appellants' post-trial motion was whether Richard, a

corporate officer of NBR, "can be held personally liable" for "NBR's failure to maintain the [deposits] in escrow." Post Trial Motion for Relief, 3/31/25, at unnumbered 8-9. Accordingly, no relief is due on Appellant's fourth issue.

In their final issue, Appellants assert that the trial court erred in finding Richard personally liable under the UTPCPL. In support, Appellants rely on the statement in ***Bennett v. A.T. Masterpiece Homes at Broadsprings, LLC***, 40 A.3d 145 (Pa. Super. 2012), that "[i]t is a basic tenet of agency law that an individual acting as an agent for a disclosed principal is not personally liable on a contract unless the agent specifically agrees to assume liability." Appellants' Brief at 45. Appellants also cite ***Shay v. Flight C Helicopter Servs.***, 822 A.2d 1 (Pa. Super. 2003), for the proposition: "Under the 'participation theory,' personal liability may be imposed only where the officer commits misfeasance — the improper performance of an affirmative act—not nonfeasance, which is 'the omission of an act which a person ought to do.'" Appellants' Brief at 45. Appellants maintain: (1) there was no evidence that Richard "personally made any representation or engaged in deceptive conduct;" (2) Richard "had limited direct interaction with" the Beckers; and (3) Andrew "testified that communications were largely through the realtor, not" Richard. ***Id***. at 46-47.

"[T]he UTPCPL was created to even the bargaining power between consumers and sellers in commercial transactions, and . . . to protect . . . consumers . . . against fraud and unfair or deceptive business practices."

*Garcia v. Am. Eagle Outfitters, Inc.*, 293 A.3d 252, 256 (Pa. Super. 2023) (citation omitted). Section 201-3 declares "unlawful" "unfair or deceptive acts or practices in the conduct of any trade or commerce." 73 P.S. § 201-3(a).

Our primary goal in statute interpretation is "to give effect to the intentions of the General Assembly." *Garcia*, 293 A.3d at 255 (*citing*, *inter alia*, 1 Pa.C.S.A. § 1921(a)). "The best indication of legislative intent is the plain language of a statute. Words and phrases ordinarily should be understood according to their common and approved usage." *Id*. at 256 (citations omitted).

Section 201-9.2 addresses "private actions" as follows:

> Any person who purchases . . . goods or services primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment **by any person** of a method, act or practice declared unlawful by section 3 of this act, may bring a private action to recover actual damages[.]

73 P.S. § 201-9.2(a) (emphasis added). The UTPCPL defines the term, "person," to mean: "**an individual**, corporation, trust, estate, partnership, unincorporated association or any other legal or commercial entity." 73 P.S. § 201-2(11) (emphasis added).

As stated above, the trial court found both Richard individually and NBR liable for a UPTCPL violation, on the grounds: (1) the Beckers relied on their representations, and the relevant Agreement provisions, to place their deposits into escrow; and (2) the uncontroverted evidence showed they failed to do so.

After careful review, we conclude Appellants' insistence, that Richard cannot be held individually liable under the UTPCPL, is meritless. Appellants do not address the statutory language set forth above: (1) that a plaintiff may bring a private action under the UPTCPL against "any person" for a prohibited act; and (2) the UPTCPL defines a "person" to include an individual. 73 P.S. §§ 201-2(11), 201-9.2(a). Accordingly, under the plain meaning of the UTPCPL, the Beckers could pursue a private action against Richard individually. *See Garcia*, 293 A.3d at 255-56.

Furthermore, the cases cited by Appellants do not lend relief. With respect to *Bennett*, Appellants ignore the sentence immediately following the one they quote. The entire paragraph stated:

> "It is a basic tenet of agency law that an individual acting as an agent for a disclosed [principal] is not personally liable on a contract between the [principal] and a third party unless the agent specifically agrees to assume liability." *Nevertheless, a person acting as an agent may assume personal liability on a corporate contract where he executes a contract in his own name or voluntarily undertakes a personal responsibility.*

*Bennett*, 40 A.3d at 150 (emphasis added). When read in its full context, this passage does not support Appellants' claim that Richard could not, under any circumstances, be individually liable under the UPTCPL. Indeed, in *Bennett*, this Court affirmed the UPTCPL judgment entered against the individual defendant. *See id*. at 156.

Furthermore, Appellants' reliance on the "participation theory," discussed in *Shay*, is misplaced. *Shay* was a wrongful death and survival

- 24 -

matter, and the decision made no reference to a UTPCPL claim. Appellants offer no explanation why we should extend **Shay** to the instant facts. In sum, we deny relief on Appellants' final issue based on the plain language of Sections 201-2(11) and 201-9.2(a) of the UPTCPL.

Having concluded that none of Appellants' claims merit relief, we affirm the judgment entered in favor of the Beckers.

Judgment affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 5/5/2026